IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 6, 2018 Session

## NEDRA FINNEY v. FRANKLIN SPECIAL SCHOOL DISTRICT BOARD OF EDUCATION, ET AL.

Appeal from the Chancery Court for Williamson County
No. 45644     Joseph A. Woodruff, Chancellor

_____

### No. M2017-02080-COA-R3-CV

_____

This is an appeal of the termination of a tenured teacher's employment pursuant to the Tenure Act, Tenn. Code Ann. §§ 49-5-501 to – 515. The Director of Schools of the Franklin Special School District filed Charges for Dismissal of the tenured teacher on the grounds of unprofessional conduct, incompetence, inefficiency, insubordination, and neglect of duty. The charging document alleged multiple incidents of unprofessional conduct based on a lack of adherence to required procedures, particularly in the area of special education laws and procedures. It further alleged that the teacher was placed on a Corrective Action Plan for the 2014-2015 school year, during which the teacher was found to be in violation of the plan on multiple occasions. Moreover, at the end of the 2014-2015 school year, the teacher was suspended for three days without pay as a result of an incident that occurred on May 11, 2015, during which the teacher improperly restrained a special education student, which violated the student's individualized education plan. The charging document also identified, *inter alia*, an incident that occurred on October 28, 2015, when the teacher got into a physical altercation with a special education student who refused to return the teacher's day planner and which resulted in the two falling to the floor. Following an evidentiary hearing, the Impartial Hearing Officer recommended dismissal on the grounds of unprofessional conduct. When the school board voted to sustain the Hearing Officer's decision, the teacher sought review in chancery court. The chancery court affirmed the teacher's dismissal based on the grounds of unprofessional conduct and incompetence. This appeal followed. Because the Hearing Officer did not find that the ground of incompetence had been proven, and that decision was not appealed, the ground of incompetence was not before the court. Therefore, it may not be considered as a ground for dismissal. However, we affirm the decision to dismiss the tenured teacher's employment with the school district on the ground of unprofessional conduct.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

J. Michael Clemmons, Nashville, Tennessee, for the appellant, Nedra Finney.

Charles W. Cagle and Brad W. Craig, Nashville, Tennessee, for the appellees, Franklin Special School District Board of Education, Tim Stillings, Allena Bell, Alicia Spencer Barker, Robert Blair, Robin Newman, Kevin Townsel, and Dr. David Snowden.

**OPINION**

The appellant, Nedra Finney, who had over 21 years of teaching experience, began her employment as a special education teacher with the Franklin Special School District (the "District") at the beginning of the 2005-06 school year. She was initially assigned to Moore Elementary School ("Moore Elementary"), where she taught for ten years until being assigned to teach at Freedom Intermediate School ("Freedom Intermediate"). The events that form the basis of Ms. Finney's dismissal took place at both schools during two academic years, the 2014-15 school year at Moore Elementary and the 2015-16 school year at Freedom Intermediate.

On November 16, 2015, Dr. David L. Snowden, the Director of Schools for the District, presented Charges for Dismissal to the Franklin Special School District Board of Education (the "Board") in which he recommended termination of Ms. Finney as a tenured teacher. On the same day, the Board voted unanimously that if any of the charges presented were true, then Ms. Finney's dismissal was warranted. The Board also directed Dr. Snowden to notify Ms. Finney of its action, which he did by letter dated November 17, 2015.[1]

The Allegations of Fact set forth in the Charges for Dismissal read in pertinent part:

Ms. Finney is a special education teacher at Freedom Intermediate School. Over the course of the 2013-2014 school year, Ms. Finney demonstrated multiple incidents of unprofessional conduct including addressing colleagues and staff in a disrespectful tone, exhibiting a negative attitude, and displaying a lack of support for administrative decisions at the school, district and state levels. Another area of concern was Ms. Finney's neglect

---

[1] As stated in *Elmi v. Cheatham Cty. Bd. of Educ.*, 546 S.W.3d 630 (Tenn. Ct. App. 2017), it is relevant to note that the Board is not the charging party. *Id*. at 633 n. 2. The Director of Schools is the charging party under Tenn. Code Ann. § 49–5–511, and the Board is the deciding body under Tenn. Code Ann. § 49–5–512(b). *Id.* Nevertheless, it is the decision of the Board to terminate a tenured teacher's employment, which was based on the Impartial Hearing Officer's ruling, that is at issue.

of duties as demonstrated by her lack of adherence to required procedures, particularly in the area of special education laws and procedures.

As a result of these performance issues, Ms. Finney was placed on a Corrective Action Plan for the 2014-2015 school year, which was aimed at helping her improve these deficiencies. While Ms. Finney initially showed some signs of improvement, her performance ultimately worsened as the school year progressed. The escalation of Ms. Finney's inappropriate conduct prompted numerous staff members to express concerns to the school administrators about Ms. Finney's unacceptable comments, behavior, and voice level towards her colleagues and her students.

During the 2014-2015 school year, Ms. Finney was found to be in violation of her Corrective Action Plan on multiple occasions. For instance, on March 24, 2015, Ms. Finney was issued a written reprimand as a result of an incident where she interrupted another teacher who was in [the] middle of teaching a class to communicate her displeasure with an administration decision regarding the placement of a student. This incident occurred in the presence of other students and was a direct violation of Ms. Finney's Corrective Action Plan, which required her to "communicate with all school personnel — especially other professionals — in a manner that demonstrates mutual respect and adheres to acceptable professional boundaries."

In addition, at the beginning of the 2015-2016 school year, Ms. Finney was suspended for three days without pay as a result of an incident that occurred on May 11, 2015, in which Ms. Finney improperly restrained a special education student. While Ms. Finney initially denied the use of restraint on the student, video evidence from the security cameras at the school clearly confirmed Ms. Finney's use of a restraint technique. Because this particular student's individualized education plan ("IEP") did not provide for the use of restraints, Ms. Finney's actions were in violation of Board policy and procedures, as well as state and federal law.

Then, on October 28, 2015, it was reported that Ms. Finney got into a physical altercation with a student as a result of the student's refusal to give her a day planner that she had requested. Specifically, multiple teachers witnessed Ms. Finney "wrestling" with the student over the planner until both Ms. Finney and the student were on the floor. Ms. Finney and the student continued to struggle, until another teacher intervened and told the student to "stop it," at which point the student stopped and sat down in one of the chairs.

Despite the District's efforts to improve Ms. Finney's deficiencies, her overall performance has not improved. Instead, there have been multiple complaints over the past several years from Ms. Finney's co-workers and parents regarding her job performance and unprofessional attitude, including, but not limited to, claims that she:

- Utilizes inappropriate behavior strategies with students including, but not limited to, the use of inappropriate restraint procedures;
- Demonstrates insubordination by openly disagreeing with school and district level policies and decisions;
- Refuses to allow free access to her classroom for professionals entering to observe and/or serve special education students;
- Fails to adhere to Board Policies and procedures, particularly in the area of special education laws and procedures;
- Demonstrated unprofessional conduct by refusing to acknowledge or interact with a student and his or her parent(s) at school reading night;
- Has used an inappropriate tone of voice with students by yelling on multiple occasions;
- Makes disparaging remarks to colleagues about other district professionals, parents, and student advocates;
- Refuses to use proven and appropriate strategies for students on the autism spectrum disorder;
- Became angry when other members of an IEP team suggested changes to her draft IEP; and
- Interrupted a therapy session to criticize the therapist's technique in front of students and staff.

A review of Ms. Finney's unsatisfactory job performance, combined with her repeated violations of school board policies and procedures, confirm that Ms. Finney's deficiencies are ongoing issues that have persisted despite the District's repeated efforts to assist her.

The charging document specified five statutory grounds under Tenn. Code Ann. § 49-5-501 for dismissing Ms. Finney: 1) unprofessional conduct, 2) incompetence, 3) inefficiency, 4) insubordination, and 5) neglect of duty.

After Ms. Finney requested a hearing pursuant to Tenn. Code Ann. § 49-5-512(a), Dale Conder, Jr., an attorney in Jackson, Tennessee, was designated to serve as the

- 4 -

Impartial Hearing Officer.[2] The hearing took place over four days in April and May of 2016. The District presented numerous witnesses, which included teachers, administrators, and parents, who testified to Ms. Finney's disrespectful interactions with co-workers and her unprofessional conduct in the classroom.

The District also presented security camera footage of three incidents involving Ms. Finney's interaction with students. One of the videos pertained to Ms. Finney's alleged improper restraint of a special education student on May 11, 2015. Another video concerned an incident that occurred on October 26, 2015, which showed Ms. Finney in a physical altercation with a student in the hallway of Freedom Intermediate. The third video recorded a physical altercation, a tug-of-war over a day planner, with a special education student on October 28, 2015. For her case-in-chief, Ms. Finney testified, and she presented three witnesses, two fellow teachers and a paraprofessional, who testified on her behalf.

At the conclusion of the hearing, the Hearing Officer directed the court reporter to provide a transcript of the hearing and instructed both parties to submit proposed findings of fact and conclusions of law. After receiving and reviewing the parties' post hearing submissions, the Hearing Officer filed his Findings of Fact and Conclusions of Law in which he ruled that Ms. Finney's dismissal was warranted on one of the five grounds alleged, that of unprofessional conduct.[3] In the conclusion, the Hearing Officer stated:

> Based on the testimony and the exhibits, I conclude that the Franklin Special School District met its burden of establishing its grounds for terminating Finney. The record establishes that Finney used a restraint hold on L.J. on May 11, 2015; she acted unprofessionally in Walker's classroom in March 2015; she acted unprofessionally in October 2015 in the two incidents involving her physical struggle with the student at Freedom Intermediate School; and she acted unprofessionally in her dealings with Herren during her meeting with Herren and Larkin [on October 30] following the October incidents.
>
> Finally, the fact that these incidents occurred while Finney was under a corrective action plan designed to ameliorate this kind of behavior

---

[2] "For the purposes of this part, 'impartial' means that the selected hearing officer shall have no history of employment with the board or director of schools, no relationship with any board member and no relationship with the teacher or representatives of the teacher." Tenn. Code Ann. § 49-5-512(a)(3).

[3] Although the Hearing Officer noted in his Findings of Fact and Conclusions of Law that five grounds for dismissal were alleged in the charging document, the Hearing Officer did not find that the District had proven the grounds of incompetence, inefficiency, insubordination, or neglect of duty.

highlights Finney's lack of professionalism. Therefore, the District has met its burden of establishing that it has grounds for terminating Finney.

Ms. Finney timely appealed the Hearing Officer's decision to the Board.[4] Following a hearing before the Board on September 19, 2016, during which counsel for the parties appeared and argued, the Board sustained the decision of the Hearing Officer and terminated Ms. Finney's employment as a tenured teacher in the District. Thereafter, Ms. Finney sought review in the Williamson County Chancery Court by filing a petition for a writ of certiorari in accordance with Tenn. Code Ann. § 49-5-513.

In the de novo hearing before the chancery court, Ms. Finney argued that the evidence did not support the finding that her conduct was unprofessional, as defined by Tenn. Code Ann. § 49-5-501(3), with respect to any of the five incidents that formed the basis of her dismissal. She also contended that she could not be dismissed for her actions on October 26 and October 30 (the meeting with Herren and Larkin) because those incidents were not specifically identified in the charging document. Ms. Finney also contended that she could not be dismissed for her alleged actions on March 24 and May 11 because she had already been disciplined for those acts, receiving a written reprimand for the March 24 incident and a three-day suspension for the May 11 incident.

In addition to hearing arguments from counsel, the chancery court conducted a review of the record before the Hearing Officer. Thereafter, the court entered an order affirming the dismissal of Ms. Finney on two grounds, "unprofessional conduct" and "incompetence." The court found, *inter alia*, that although the charging instrument did not specify the October 26 and October 30 incidents, Ms. Finney received adequate notice of those charges "through proper discovery and pre-trial procedure." Moreover, the trial court found that Ms. Finney waived the issue by failing to object to the admission of the evidence.

The court ruled that the "cumulative nature" of Ms. Finney's disrespectful interactions with colleagues constituted unprofessional conduct under the Tenure Act. Significantly, the court determined that "[s]tanding alone, each of the incidents captured on video is a sufficient cause for dismissal." Of the three, however, the court found the

---

[4] "If the affected teacher desires to appeal from a decision rendered in whole or in part in favor of the school system, the teacher shall first exhaust the administrative remedy of appealing the decision to the board of education within ten (10) working days of the hearing officer's delivery of the written findings of fact, conclusions and decision to the affected employee." Tenn. Code Ann. § 49–5–512(c)(1). "Upon written notice of appeal, the director of schools shall prepare a copy of the proceedings, transcript, documentary and other evidence presented and transmit the copy to the board. . . ." Tenn. Code Ann. § 49–5–512(c)(2). "The board shall hear the appeal on the record and no new evidence shall be introduced." Tenn. Code Ann. § 49–5–512(c)(3). "The board may sustain the decision, send the record back if additional evidence is necessary, revise the penalty or reverse the decision." *Id.*

"day planner" altercation, which occurred on October 28, 2015, "particularly troublesome":

> Not only is the interaction between Ms. Finney and her student a violation of both Ms. Finney's [Corrective Action Plan] requirements and the student's Behavioral Support Plan, it is, in itself, a blatant display of unprofessionalism. While Ms. Finney's [Corrective Action Plan] mandated that she adhere to the required district, state, and federal procedures, physically engaging with this particular student was a direct violation of his Behavioral Support Plan which specifically prohibited educators from physical engagement. This encounter is especially egregious in light of the student's disability and the teacher's vast amount of experience. Beyond the sheer spectacle of this incident, most importantly, the student could have been injured during this interaction. The District could also have been subject to legal jeopardy if the student were injured in this struggle.

> Ms. Finney displayed a lack of professionalism through the manner in which she managed all three incidents recorded on the District's security cameras, especially in light of her experience and specialized training. While Ms. Finney's conduct, which occurred between 2014-2015, could arguably amount to several other causes for dismissal, it is most synonymous with behavior characterized as "unprofessional" and "incompetent."

This appeal followed.

## ISSUES

The issues before us, which we have rephrased, are as follows:

I.    Did the trial court incorrectly conclude that Ms. Finney was guilty of incompetence?

II.   Did the trial court err by failing to follow the de novo standard of review required under the Tenure Act?

III.  Did the trial court err in considering alleged offenses that were not specifically stated in writing in the Charges for Dismissal as required under the Tenure Act?

IV.   Did the trial court incorrectly conclude that Ms. Finney was guilty of unprofessional conduct?

**STANDARD OF REVIEW**

Under the Tenure Act, when a school board terminates a tenured teacher's employment, the teacher has the right to a chancery court review of the school board's decision. Tenn. Code Ann. § 49-5-512(c)(4).

The standard by which courts review a school district's decision to terminate a tenured teacher has been modified significantly since 1992. As our Supreme Court explained in 2017 in *Emory v. Memphis City Schools Board of Education*:

> In 1992, our legislature enacted comprehensive legislation related to education that included amendments to the Tenure Act. Among other things, the amendments required that teachers be provided "a full, complete, and impartial hearing before the board, including the right to have evidence ... included in the record of the hearing." The Teachers' Tenure Act, ch. 535, 1992 Tenn. Pub. Acts (amending Tenn. Code Ann. § 49-5-512). The amendments also mandated the preparation of a record of the hearing and directed that all actions by the school board be "reduced to writing and included in the record, together with all evidence otherwise submitted." The Teachers' Tenure Act, ch. 535, 1992 Tenn. Pub. Acts (amending Tenn. Code Ann.§ 49-5-512(a)(7)).
>
> In addition to mandating a hearing and the creation of a record, the 1992 legislation also set forth a standard of judicial review of the decision that resulted from the school board hearing. Subsection (g) of Tennessee Code Annotated section 49-5-513 was amended to read:
>
>> The review of the court shall be limited to the written record of the hearing before the board and any evidence or exhibits submitted at such hearing. Additional evidence or testimony shall not be admitted except as to establish arbitrary or capricious action or violation of statutory or constitutional rights by the board.
>
> The Teachers' Tenure Act, ch. 535, 1992 Tenn. Pub. Acts (amending Tenn. Code Ann. § 49-5-513(g); *see Wallace*, 303 S.W.3d at 686-87 (Tenn. Ct. App. 2000) (noting the statutory change). Thus, the 1992 amendments changed the judicial review from a de novo hearing to a review of the written record of the school board hearing; it gave the chancery court limited authority to admit additional evidence only if needed to establish that the school board acted arbitrarily or capriciously or that the school board violated the teacher's statutory or constitutional rights. *See* Tenn. Code Ann. § 49-5-513(g). The 1992 amendments led some appellate courts

to apply a common-law writ of certiorari standard of review, i.e., limited to the record to determine whether there was material evidence to support the school board's decision, with new evidence admissible only on the issues of whether the school board exceeded its jurisdiction or acted illegally, arbitrarily or capriciously. *See, e.g., Wallace*, 303 S.W.3d at 687 (quoting *Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983)); *see also Winkler*, 63 S.W.3d at 381.

In 2007, however, the legislature amended the Tenure Act to further address the standard of review. The 2007 amendment added language to section 49-5-512(c)(7), now codified at (c)(4). It stated that a party dissatisfied with the school board's decision "shall have the right to appeal to the chancery court." Tenn. Code Ann. § 49-5-512(c)(4) (2016). If such an appeal were filed, the school board was directed to transmit the record of its proceedings to the chancery court. The amendment then provided: "The review of the court shall be de novo on the record of the hearing held by the hearing officer and reviewed by the board." *Id*.

These statutes do not refer to either the common law or the statutory writ of certiorari. Reading section 49-5-512(c)(4) and section 49-5-513(g) together, however, **it is apparent that the standard of review under the Tenure Act is not the standard applicable to a common law writ of certiorari. Instead, the standard of review specified in the statute is intended to permit the chancery court to address the intrinsic correctness of the school board's decision. The appellate court in *Ripley* aptly described this standard of review: "The chancery court's review, as contemplated by [section 49-5-513], is a de novo review wherein the chancery court does not attach a presumption of correctness to the school board's findings of fact, nor is it confined to deciding whether the evidence preponderates in favor of the school board's determination."** *Ripley*, 293 S.W.3d at 156 (citing *Lee*, 237 S.W.3d at 329). The teacher does not have the ability to present new evidence on the merits of the charges; the chancery court's de novo review is limited to the record of the school board proceedings. New evidence is only admissible "to establish arbitrary or capricious action or violation of statutory or constitutional rights by the board." Tenn. Code Ann. § 49-5-513(g).

514 S.W.3d 129, 140-42 (Tenn. 2017) (emphasis added). Thus, the chancery court is to review appeals under the Tenure Act pursuant to the standard of review as explained above in *Emory*.

If an appeal is taken from the decision of the chancery court to this court, we review the chancellor's decision pursuant to Rule 13(d) of the Tennessee Rules of

Appellate Procedure "to determine whether the evidence preponderates in favor of the chancery court's findings of fact." *Id*. at 142. Issues of law are reviewed de novo, with no presumption of correctness given to the chancery court's conclusions. *Id*.

## ANALYSIS

### I.     THE GROUND OF INCOMPETENCE

Ms. Finney contends the court erred in finding that the statutory ground of incompetence had been proven.[5] We have determined that the issue of incompetence was not properly before the trial court; therefore, the court erred by holding that the ground of incompetence had been proven.

Under the Tenure Act, the plaintiff's petition for writ of certiorari serves as the plaintiff's pleading. *See Cooper v. Williamson Cty. Bd. of Educ.*, 746 S.W.2d 176, 182 (Tenn. 1987). It "raises the issues for review, stating the substance of the board's actions and the errors made by the board in its decision." *Id*. Our Supreme Court has explained that "the primary purpose of pleadings is to provide notice of the issues presented to the opposing party and court." *Webb v. Nashville Area Habitat for Humanity*, Inc., 346 S.W.3d 422, 426 (Tenn. 2011). Therefore, "a judgment beyond the scope of the pleadings is beyond the notice given the parties and…should not be enforced." *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 440 (Tenn. 2012) (quoting *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955)).

The Notice for Dismissal asserted five statutory grounds for dismissal: unprofessional conduct, incompetence, inefficiency, insubordination, and neglect of duty. After a hearing on the charges, the Hearing Officer found that the District proved the ground of unprofessional conduct, and on that basis, the District met its burden of establishing a ground for terminating Ms. Finney. Significantly, the Hearing Officer did not find that the District proved any other ground, only unprofessional conduct.

After the Board sustained the Hearing Officer's decision to terminate Ms. Finney as a tenured teacher on the ground of unprofessional conduct, Ms. Finney sought review in the Williamson County Chancery Court by filing a petition for a writ of certiorari in accordance with Tenn. Code Ann. § 49-5-513. In her petition, Ms. Finney contended that the evidence was insufficient to support the finding that she engaged in unprofessional

---

[5] Tennessee Code Annotated section 49-5-501(5) defines "incompetence" to mean: "being incapable, lacking adequate power, capacity or ability to carry out the duties and responsibilities of the position. This may apply to physical, mental, educational, emotional or other personal conditions. It may include lack of training or experience, evident unfitness for service, a physical, mental or emotional condition making the teacher unfit to instruct or associate with children or the inability to command respect from subordinates or to secure cooperation of those with whom the teacher must work."

conduct or that her employment should be terminated. Although the District had the right to also challenge the decision, it did not. *See* Tenn. Code Ann. § 49-5-512(c)(4) ("Any party dissatisfied with the decision rendered by the board shall have the right to appeal to the chancery court…."). Thus, the issues were limited to whether Ms. Finney engaged in unprofessional conduct for which she could be dismissed as a tenured teacher. Nevertheless, the trial court determined that Ms. Finney's conduct was "most synonymous with behavior categorized as 'unprofessional' and 'incompetent.'"

A de novo review under the Tenure Act by the chancery court is limited to the issues before the court. *Cooper*, 746 S.W.2d at 182. As explained in *Cooper*, "In the Chancery Court, **the plaintiff's petition raises the issues for review**, stating the substance of the board's actions and the errors made by the board in its decision," and "the Chancellor then entertains arguments and considers the evidence presented in Chancery Court to **decide the issues raised** on their merits to determine whether the board's action was justified." *Id*. (emphasis added). Neither Ms. Finney nor the Board raised the issue of incompetence; accordingly, the ground of incompetence was beyond the scope of the pleadings. *See Clark*, 368 S.W.3d at 440; *see also Brown*, 281 S.W.2d at 497. Therefore, we reverse the trial court's determination that the ground of incompetence was proven.

## II.    DE NOVO REVIEW UNDER THE TENURE ACT

Tennessee Code Annotated section 49-5-512(c)(4) states that any party dissatisfied with the decision rendered by the board shall have the right to appeal to the chancery court where "[t]he review of the court shall be de novo on the record of the hearing held by the hearing officer and reviewed by the board." As we discussed in more detail earlier in this opinion, "[t]he chancery court's review . . . is a de novo review wherein the chancery court does not attach a presumption of correctness to the school board's findings of fact, nor is it confined to deciding whether the evidence preponderates in favor of the school board's determination." *Emory*, 514 S.W.3d at 141-42 (quoting *Ripley v. Anderson Cty. Bd. of Educ.*, 293 S.W.3d 154, 156 (Tenn. Ct. App. 2008)).

This form of judicial review requires the chancery court to make a fresh and independent determination of both the facts and the law. *Cooper*, 746 S.W.2d at 181. It is not sufficient for the chancery court to determine whether the evidence preponderates in favor of the Hearing Officer's decision. *Id*. As *Cooper* explained:

> [T]he scope of review in the Chancery Court is not confined to a determination of whether the evidence preponderates in favor of the determination of the administrative board and no presumption of correctness attaches to the decision of the school board. . . . We think that a hearing *de novo* requires the Chancellor to redetermine both the facts and the law from all the evidence before the court. While not fully analogous,

this type of review is more akin to an appeal from General Sessions Court pursuant to [Tenn. Code Ann.] § 19-1-118….

*Id*.

Ms. Finney argues that the Chancellor applied an incorrect standard of review. This contention is based on statements made by the Chancellor in the final order. For example, the Chancellor stated: "It is not the job of the trial court to reweigh the evidence; rather, the Court must determine whether the Hearing Officer had enough evidence to support his decision," and "the fact that [the hearing officer] found the District's witnesses to be more credible is a determination that deserves deference." As we explain below, although the foregoing and similar statements erroneously identify the applicable standard of review, we find the errors harmless. The final order reveals that the Chancellor made numerous material findings of fact that were based on his independent determination of the facts and the credibility of key witnesses, which we find sufficient to affirm the determination that Ms. Finney engaged in unprofessional conduct on numerous occasions.

A.

Although the order reads "[i]t is not the job of the trial court to reweigh the evidence," the same order states the correct standard of review in more detail:

> In cases brought under the Tenure Act, "[t]he review of the court shall be de novo on the record of the hearing held by the hearing officer and reviewed by the board." *Id*. The "chancery court's review, as contemplated by [§ 49-5-513], is a de novo review wherein the chancery court does not attach a presumption of correctness to the school board's findings of fact, nor is it confined to deciding whether the evidence preponderates in favor of the school board's determination." *Emory*, 514 S.W.3d at 140 (citing *Ripley*, 293 S.W.3d at 156).

Moreover, several findings by the Chancellor reveal that he did not always defer to the findings by the Hearing Officer or review them with a presumption of correctness. To the contrary, the Chancellor made numerous independent determinations of substantive and material facts. For example:

> The record clearly establishes that, over the course of two years, Ms. Finney also exhibited conduct that is generally "unbecoming to a member of the teaching profession." Tenn. Code Ann. § 49-5-501(3). With the implementation of the District [sic], the District began to recognize that Ms. Finney's conduct left much to be desired in the realm of professionalism, and did not characterize the positive and collaborative environment that

FSSD wished to promote within its school system. Even after extending Ms. Finney's [Corrective Action Plan] for the following school year, her negative interactions with students and other teachers continued. The statute's list of conduct which could illustrate "unprofessionalism" is non-exhaustive. This Court finds that the cumulative nature of Ms. Finney's improper interactions with her students, and between Ms. Finney and her colleagues meets the statutory burden to prove "unprofessional conduct."

.    .    .

The unlawful restraint that Ms. Finney exercised on May 11, 2015 was in direct violation of state and federal law, as well as local policy surrounding the use of restraint on students who have disabilities….

This Court agrees with the Hearing Officer's determination that the October 28, 2015 "planner" incident is also particularly troublesome. Not only is the interaction between Ms. Finney and her student a violation of both Ms. Finney's [Corrective Action Plan] requirements and the student's Behavioral Support Plan, it is, in itself, a blatant display of unprofessionalism. While Ms. Finney's [Corrective Action Plan] mandated that she adhere to the required district, state, and federal procedures, physically engaging with this particular student was a direct violation of his Behavioral Support Plan which specifically prohibited educators from physical engagement. This encounter is especially egregious in light of the student's disability and the teacher's vast amount of experience. Beyond the sheer spectacle of this incident, most importantly, the student could have been injured during this interaction. The District could also have been subject to legal jeopardy if the student were injured in this struggle.

Ms. Finney displayed a lack of professionalism through the manner in which she managed all three incidents recorded on the District's security cameras, especially in light of her experience and specialized training. While Ms. Finney's conduct, which occurred between 2014- 2015, could arguably amount to several other causes for dismissal, it is most synonymous with behavior categorized as "unprofessional" and "incompetent." The sheer number of education professionals who voiced their concerns through testimony at trial, as well as the corroboration of Ms. Finney's intimidating and unprofessional behavior by parents of Ms. Finney's students who felt obliged to voice their concerns, demonstrates that the witnesses' perception of Ms. Finney's conduct was not simply based on personal opinion. The record is replete with evidence meeting the statutory requirement for dismissal based on Ms. Finney's pattern of unprofessional interactions and incompetence.

We also note that the Chancellor's statement in the third paragraph above that "[t]his Court agrees with the Hearing Officer's determination that the October 28, 2015 'planner' incident is also particularly troublesome" is not in conflict with the applicable standard of review. Agreeing with the Hearing Officer's findings is very different from deferring to the factual determinations. It is also very different from reviewing the Hearing Officer's factual determinations with a presumption that the evidence preponderates in favor of the findings. The Chancellor agreeing with the Hearing Officer's determination is synonymous with saying the court made an independent review of the relevant evidence and came to the same conclusion, which is the proper standard of review. Thus, although the Chancellor erroneously deferred to some of the findings by the Hearing Officer, the record reveals that the Chancellor conducted an independent review of substantial and material evidence and came to his own conclusions, which is proper.

## B.

Ms. Finney also contends the trial court improperly gave deference to the Hearing Officer's credibility determinations.

Like an appeal from General Sessions Court, the chancery court in a Tenure Act case must make a fresh determination of the facts and the law. However, unlike an appeal from General Sessions Court where the circuit court hears and observes live witnesses, the chancery court's review under the Tenure Act is "limited to the written record of the hearing before the board and any evidence or exhibits submitted at such a hearing." Tenn. Code Ann. § 49-5-513(g). Accordingly, the Chancellor was deprived of the opportunity to observe live testimony during the appeal of this matter. Nevertheless, the Chancellor could still make his own credibility determinations based on the record, which included not only the transcript of the evidence but also video recordings of Ms. Finney's interactions with students and exhibits for which the Chancellor had the same ability to observe as did the Hearing Officer.

Furthermore, credibility determinations are not limited to observing a witness as he or she testifies in one's presence. As the Tennessee Pattern Jury Instructions state, "[i]n deciding which testimony you believe, you should rely on your own common sense and everyday experience." T.P.I. – CIVIL 2.20 Credibility of Witness, 8 Tenn. Prac. Pattern Jury Instr. (2018 ed.). The pattern instructions further state:

There is no fixed set of rules to use in deciding whether you believe a witness, but it may help you to think about the following questions:

1. Was the witness able to see, hear, or be aware of the things about which the witness testified?

- 14 -

2. How well was the witness able to recall and describe those things?

3.  How long was the witness watching or listening?

4.  Was the witness distracted in any way?

5.  Did the witness have a good memory?

.    .    .

7.  Was the witness making an honest effort to tell the truth, or did the witness evade questions?

8.  Did the witness have any interest in the outcome of the case?

9.  Did the witness have any motive, bias or prejudice that would influence the witness' testimony?

10. How reasonable was the witness' testimony when you consider all of the evidence in the case?

11. Was the witness' testimony contradicted by what that witness has said or done at another time, by the testimony of other witnesses, or by other evidence?

12.  Has there been evidence regarding the witness' intelligence, respectability, or reputation for truthfulness?

*Id*.

The Tennessee Supreme Court explains the differences between credibility determinations that are made after observing live testimony versus credibility determinations that are based on a reading of the cold record and documentation:

Unlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary.

In contrast, appellate review of documentary proof, such as depositions or other forms of testimony presented to the trial court in a "cold" record, differs considerably. When reviewing documentary proof, all impressions of weight and credibility are drawn from the contents of the evidence, and not from the appearance of witnesses and oral testimony at trial. As a result, appellate courts may make an independent assessment of the credibility of the documentary proof it reviews, without affording deference to the trial court's findings.

*Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783-84 (Tenn. 1999) (citations omitted).

Although Ms. Finney contends the Chancellor deferred to the credibility findings of the Hearing Officer, the only material "credibility" finding the Hearing Officer made was that the testimony of special education teacher Betsy Bagsby-Disch was "most credible." However, it is significant to note that the Hearing Officer's credibility finding hinged on her "expertise," which was based on her education, certifications, and experience, not on her demeanor while testifying. Moreover, the Chancellor expressly stated that he credited the testimony of Ms. Bagby-Disch regarding Ms. Finney's alleged use of an illegal restraint based on her expertise in the area of child restraint. As a consequence, although the Chancellor stated that he would defer to the Hearing Officer's credibility findings, the Chancellor was in just as good a position to make an independent credibility finding for the same reason, her expertise.

The record also reveals that the Chancellor made his own, independent determinations regarding the persuasiveness of evidence or credibility of other witnesses based on the record before him. For example, the Chancellor stated:

> While Ms. Finney did have relationships with other co-workers that were not acrimonious, the presentation of testimony by co-workers who were also Ms. Finney's friends draws away from their credibility as witnesses. Not only were those particular teachers who testified in Ms. Finney's favor her friends, both also maintained their own classrooms. It would make sense that neither witness had seen Ms. Finney use an improper restraint procedure because they were not in her classroom on a day-to-day basis. Several of the District's witnesses, on the other hand, worked in Ms. Finney's classroom and had a more intimate knowledge of Ms. Finney's behaviors with her students.

Although the Chancellor stated that he deferred to the credibility findings of the Hearing Officer, this error does not entitle Ms. Finney to relief. As our rules of appellate procedure clearly provide, "[a] final judgment from which relief is available . . . shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). Based on our observations above, we are unable to conclude that the error of deferring to the credibility findings of the Hearing Officer more probably than not affected the judgment or resulted in prejudice to Ms. Finney. Accordingly, to the extent the Chancellor erred, it was harmless.

Ms. Finney contends the District did not identify the incidents on October 26 (the altercation in the hallway of Freedom Intermediate) and October 30, 2015 (the meeting with Herren and Larkin) in the charging document; therefore, these two incidents cannot form the basis of her dismissal. The District contends it provided adequate notice, and Ms. Finney waived the issue by not objecting to the admission of the evidence at the hearing.

The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that no state shall "deprive any person of life, liberty, or property, without due process of law." Tenured teachers possess "a constitutionally protected property interest in continued employment," and the state cannot deprive them of this right without procedural due process. *Thompson v. Memphis City Schools Bd. of Educ.*, 395 S.W.3d 616, 627 (Tenn. 2012). At minimum, due process "entitles a tenured teacher to pre-termination notice of the charges against her, an explanation of the employer's evidence, and an opportunity to present her side of the story to her employer." *Id*. Therefore, under the Tenure Act, the Board cannot dismiss a tenured teacher unless it provides the teacher with a written copy of the charges, "***specifically*** stating the offenses that are charged." Tenn. Code Ann. § 49-5-511(a)(4) (emphasis added).

While the notice of charges need not possess the "technical nicety required in indictments," it must be "sufficient in substance and form to fairly apprise the teacher of the charge against [her] and enable [her] to prepare [her] defense in advance of the hearing." *Turk v. Franklin Special Sch. Dist.*, 640 S.W.2d 218, 220 (Tenn. 1982) (quoting *Potts v. Gibson*, 469 S.W.2d 130 (Tenn. 1971). Accordingly, the school board's charging document must include a list of the charges and the factual allegations supporting them. *See Taylor v. Clarksville Montgomery Cty. Sch. Sys.*, No. M2009-02116-COA-R3-CV, 2010 WL 3245281, at *5 (Tenn. Ct. App. Aug. 17, 2010).

## A. Waiver

The Chancellor determined that Ms. Finney waived the due process issue as to both incidents by failing to object to the admission of the evidence at the hearing. We respectfully disagree.

Tennessee Code Annotated section 49-5-512(a)(4) provides that all parties shall have "the right to have evidence deemed relevant by the submitting party included in the record of the hearing, even if objected to by the opposing party." Consequently, had Ms. Finney objected to the admission of the evidence at the hearing, the Hearing Officer would have admitted it nonetheless. Significantly, while all "evidence deemed relevant by the submitting party" is admissible at the hearing, this does not mean that all evidence may be considered when the Hearing Officer or the court rules on the issues presented.

- 17 -

As previously stated, due process considerations require that incidents or issues to be tried must be sufficiently identified in the Charges for Dismissal. *Thompson*, 395 S.W.3d at 627; Tenn. Code Ann. § 49-5-511(a)(4). Therefore, Ms. Finney did not waive the due process issue by failing to object to the admission of the evidence at the hearing. Moreover, Ms. Finney raised the issue in her pre-hearing memorandum and in her post-hearing memorandum, which the Hearing Officer requested prior to rendering his decision.

## B. October 26, 2015 Hallway Altercation

On October 26, 2015, in an incident captured on video, Ms. Finney was involved in a physical altercation with a special education student in the hallway of Freedom Intermediate.

As Ms. Finney correctly notes, the charging document does not reference an October 26, 2015 incident; however, it specifically identifies the dates of two other incidents. The relevant provisions as stated in the Allegations of Fact in the Charges for Dismissal read as follows:

> In addition, at the beginning of the 2015-2016 school year, **Ms. Finney was suspended for three days without pay as a result of an incident that occurred on May 11, 2015, in which Ms. Finney improperly restrained a special education student. While Ms. Finney initially denied the use of restraint on the student, video evidence from the security cameras at the school clearly confirmed Ms. Finney's use of a restraint technique.** Because this particular student's individualized education plan ("IEP") did not provide for the use of restraints, Ms. Finney's actions were in violation of Board policy and procedures, as well as state and federal law.

> Then, **on October 28, 2015, it was reported that Ms. Finney got into a physical altercation with a student as a result of the student's refusal to give her a day planner that she had requested.** Specifically, multiple teachers witnessed Ms. Finney "wrestling" with the student over the planner until both Ms. Finney and the student were on the floor. Ms. Finney and the student continued to struggle, until another teacher intervened and told the student to "stop it," at which point the student stopped and sat down in one of the chairs.

(Emphasis added). Thus, Ms. Finney was given notice "sufficient in substance and form" to fairly apprise her of the charges as they relate to the May 11 and October 28, 2015 incidents. *See Turk*, 640 S.W.2d at 220; *see also Potts*, 469 S.W.2d at 133.

As for the October 26 incident, the Notice of Charges was less specific, alleging that

> there have been multiple complaints over the past several years from Ms. Finney's co-workers and parents regarding her job performance and unprofessional attitude, including, but not limited to, claims that she:
>
> - Utilizes inappropriate behavior strategies with students including, but not limited to, the use of inappropriate restraint procedures;

Here, the District could have identified the October 26 incident as it did the May 11 and October 28 incidents by providing the date and a detailed description, though we emphasize that the Tenure Act does not mandate that level of specificity. As previously stated, the charging document need not possess the "technical nicety required in indictments." *Turk*, 640 S.W.2d at 220.

For example, in *Taylor v. Clarksville Montgomery County School System,* we ruled that a less than specific identification of probative evidence provided sufficient notice.

> [Mr.] Taylor cites to *Turk v. Franklin Special School District*, 640 S.W.2d 218 (Tenn. 1982) to support his contention that he should have been put on notice of the content of Detective Webb's testimony. The facts of *Turk* are quite different than the facts here and appellant's reliance on that case is misplaced.
>
> Here, the Charges of Dismissal made against Taylor set forth specifically the charges made against him and the factual allegations that supported those charges. The factual allegations contained in the Charges of Dismissal were the kiss, the "I love you notes", hugs to students and telling students "I love you" or similar statements. The facts included in the Charges were the exact facts that [were] testified to by Detective Webb. This issue is without merit.

2010 WL 3245281, at *5. In *Taylor*, the school district did not provide dates or detailed descriptions, but it did provide the teacher with general notice of consistent conduct, e.g. "I love you notes" and telling students "I love you." Likewise, in this case, while it was not necessary for the District to give a specific date or to give extensive details about the October 26 incident, the District should have, at minimum, identified the inappropriate behavior strategy at issue. For example, the District would have provided sufficient notice had the District alleged that Ms. Finney utilized inappropriate behavior strategies **by engaging in physical altercations with students**.

- 19 -

Moreover, we have determined that other actions of the District required the exclusion of evidence. On January 28, 2016, a few months prior to the hearing, Ms. Finney requested the October 26 video recording. In response to this request, the District assured her that the video had nothing to do with the charges against her, stating:

> With respect to the requests for video footage for the week of Oct. 5th; Oct. 26th; and Oct. 29th, there has been no articulation by opposing counsel that this footage bears any relevance to the due process hearing. Ms. Finney was not disciplined as a result of any of the incidents that allegedly occurred on these dates and none of them are referenced in the Charges for Dismissal. Until Ms. Finney's [sic] offers some type of explanation as to why the requested videos from Oct. 5th; Oct. 26th; and Oct. 29th, are relevant to these proceedings, the District is left to guess at its own peril as to what the potential relevance of these videos might be.

Based on the District's foregoing representations, evidence concerning the October 26 incident should not have been considered when deciding whether Ms. Finney's actions constituted unprofessional conduct. Accordingly, we will not consider that incident.

### C. October 30, 2015 Meeting

On October 30, 2015, Ms. Finney met with Beth Herren, a special education supervisor for the District, and Louise Larkin, the principal at Freedom Intermediate, to discuss the "day planner" incident captured on video on October 28. On rebuttal, Ms. Larkin testified that Ms. Finney addressed Ms. Herren in a disrespectful and hostile manner at that meeting.

Like the October 26 incident, the charging document did not identify this meeting by providing a date, the identity of the participants, or a general description of the meeting. Instead, the charging document merely alleged that Ms. Finney had disrespectful interactions with other professionals. As such, we have determined that this charge was too vague to allow Ms. Finney to prepare a defense against this particular allegation. As previously stated, due process requires the District to identify, more specifically, the actions or omissions at issue.

Also noteworthy, the District did not introduce evidence of Ms. Finney's behavior in this meeting in its case-in-chief, only in rebuttal, which suggests that for the District, this incident was merely an afterthought, not a basis of the Charges for Dismissal.

## IV. UNPROFESSIONAL CONDUCT

Ms. Finney argues that the District failed to prove the ground of unprofessional conduct based on her actions on March 24, 2015 (classroom interruption), May 11, 2015 (restraint in hallway) and October 28, 2015 (day planner incident). She argues, *inter alia*, that she was already disciplined for the March 24 and May 11, 2015 incidents; therefore, she cannot be punished a second time for these actions. She also argues that even if the court could consider her conduct on those dates, as well as her conduct on October 28, the Board did not prove that her actions amounted to unprofessional conduct as defined by the Tenure Act.

We have determined that Ms. Finney's argument is misplaced, because the Chancellor's decision was principally based on the October 28, 2015 incident, for which she had not been previously disciplined, and on significant and material evidence of Ms. Finney's unprofessional conduct that was unrelated to the March 24, 2015 (classroom interruption) and May 11, 2015 (restraint in hallway) incidents.

A tenured teacher may be dismissed for unprofessional conduct. Tenn. Code Ann. § 49-5-511(2). Unprofessional conduct is "conduct that violates the rules or ethical code of a profession or that is unbecoming a member of a profession in good standing, or which indicates a teacher's unfitness to teach." *Morris v. Clarksville-Montgomery Cty. Consol. Bd. of Educ.,* 867 S.W.2d 324, 329 (Tenn. Ct. App. 1993) (citing 68 Am. Jur.2d Schools § 161 (1993)).

Tennessee Code Annotated section 49-5-501(3) lists five factors in its definition of "conduct unbecoming to a member of the teaching profession."[6] The one relevant here reads: "Disregard of the teacher code of ethics in part 10 of this chapter, in such manner as to make one obnoxious as a member of the profession." Tenn. Code Ann. § 49-5-501(3)(D).[7] Pertinent here, the Teacher Code of Ethics states that an educator "[s]hall make reasonable efforts to protect the student from conditions harmful to learning or to health and safety." *Taylor*, 2010 WL 3245281 at *8 (quoting Tenn. Code Ann. § 49-5-1003(b)(7)).[8]

---

[6] Tennessee Code Annotated section 49-5-501 uses the terms "unprofessional conduct" and "conduct unbecoming a member of the teaching profession" interchangeably.

[7] While the court is not limited to the factors listed in the statutory definition, the factors "are a good starting point for the analysis of whether the material evidence supports the Trial Court's finding of unprofessional conduct." *Taylor*, 2010 WL 3245281 at *8.

[8] Legislation enacted on July 1, 2018, amended the language of Tenn. Code Ann. § 49-5-1003. 2018 Tenn. Pub. Acts Ch. 937.

The Hearing Officer found the actions of Ms. Finney on March 24, May 11, and October 28, 2015 proved the ground of unprofessional conduct. The Chancellor found that the October 28, 2015 incident, standing alone, was sufficient to prove the ground of unprofessional conduct. Nevertheless, the Chancellor also relied on other incidents and evidence to conclude that Ms. Finney's actions constituted unprofessional conduct for which her employment should be terminated.

A.  The October 28, 2015 "Day Planner" Incident

On October 28, 2015, in an incident captured on video, Ms. Finney was involved in a physical altercation with a special education student over a day planner at Freedom Intermediate. After reviewing the video footage of October 28, as well as the testimony in the record, the trial court determined that Ms. Finney was guilty of unprofessional conduct.

The video shows Ms. Finney and a special education student engaged in a physical struggle over a day planner that resembled a tug-of-war combined with a wrestling match. In the video, the student entered a main office first, and when Ms. Finney entered, the student placed the planner on a chair and sat down on top of it so that part of the planner protruded from underneath him. Ms. Finney briskly walked over and grabbed the planner. Both Ms. Finney and the student continued holding onto the planner in an attempt to pull it from the other. This struggle led both Ms. Finney and the student against the wall and onto the floor while both still held on to the planner. The incident ended with the student jumping up and returning to the chair and Ms. Finney getting up and walking out of the room with the planner.

The special education student had a behavior support plan that outlined disciplinary steps for an educator to take in the event of a behavioral problem. The outlined intervention for this student was a "three strikes program." The three strikes program was designed so that, first, the student received a warning from the educator in the form of a "yellow card." The plan was for the teacher to immediately display the card, the intent of which was to calm the situation without further action. Second, if the yellow card was ineffective, the educator was to escort the student to a calm-down room. The plan warns that the student gets "more 'wound up' when he starts moving and getting physical." If these two actions do not resolve the problem, the student may be sent to in-school suspension or home.

Ms. Finney testified that she signed this student's behavior support plan and that she was familiar with it; however, when the student took the planner from her on October 28, she decided to "try something different." Ms. Finney stated that she grabbed the planner and, as the student attempted to pull the planner from her hands, she "just didn't let go. And he jerked this way (indicating) and that way, and I just simply kept my hands clenched."

Ms. Finney explained, "I'm moving over to the wall because I had just gotten results of a bone density test and the bones in my hip were thinning. And if I fall, the most likely place for me to fall is on my hips." According to Ms. Finney, she was moving to the wall in preparation of going down on the floor with the student "because the best way to keep from falling is to get on the floor." Ms. Finney further stated that "[t]he only motion I'm making is I'm simply clinching my fingers around the spiral binding . . . I slid down, trying to get in the corner. And he jerked it and pulled me over."

Angela Tisdale, a sixth-grade teacher at Freedom Intermediate, testified that she entered the office when Ms. Finney and the student were already on the floor. She "observed two individuals wrestling over an object in the corner of the office." According to Ms. Tisdale, when Ms. Finney and the student were on the floor, she saw "pulling of the notebook" and "the natural movement that two bodies would have when they're trying to get positioned." Ms. Tisdale testified that Ms. Finney was not trying to stop the situation. It was not until someone in the office threatened to call the principal that the student jumped up and sat back down in the chair, which ended the incident.

Special education teacher, Betsy Bagsby-Disch, also testified. She worked with this specific student for the previous two years and stated that that the incident "was not in keeping with [the student's] behavior support plan," which she described as "very effective." According to Ms. Bagsby-Disch, the appropriate intervention in the planner incident would include "giving or showing the student a yellow card" instead of using force to take the planner.

When reviewing the student's behavior support plan, Ms. Bagsby-Disch testified that this student "tends to increase his behavior levels and escalates more with physical engagement." She further explained that because the student's behavior during the planner incident was "not disruptive to a classroom setting … or appear[ed] to be moving toward becoming a threat to his safety and safety of others," engaging in a physical power struggle over the planner was not appropriate.

Four education professionals, Angela Tisdale, Betsy Bagsby-Disch, Beth Herren, special education supervisor, and Louise Larkin, principal of Freedom Intermediate, all testified that Ms. Finney's actions were highly inappropriate for a teacher in Ms. Finney's position. For example, Ms. Tisdale testified:

> In any situation, you don't want to put yourself in a position where you're engaged in a physical altercation over a planner or anything else with a student. There [are] too many things that could go wrong. You could harm the student. You could hurt yourself. You put yourself in a very precarious situation as a teacher to do that.

Additionally, Ms. Herren, testified:

> Oh, you wouldn't – you wouldn't need to have any kind of restraint training or nonverbal crisis intervention training to know not to get into a power struggle with a student, I mean, over a piece of paper….I felt like Ms. Finney was a ticking time bomb.

Considering the disturbing and undeniable video footage of the physical struggle in the main office of the school as well as the compelling testimony of several professional educators who witnessed the incident in person or on tape, the evidence in the record preponderates in favor of the Chancellor's determination that Ms. Finney's behavior on October 28 was "unbecoming a member of a profession in good standing." Further, Ms. Finney violated the Teacher Code of Ethics, which requires teachers to "make reasonable effort to protect the student from conditions harmful to learning or to health and safety." Tenn. Code Ann. § 49-5-1003(b)(7). As Ms. Finney admitted, she knew the risk of injury involved when she decided to physically engage this student over a planner but thought the best way to avoid harming herself and this child was to move the altercation to the floor. To the contrary, the safest and most professional alternative was to avoid a physical confrontation altogether by following the "three strikes" protocol.

The Chancellor correctly found that "[b]eyond the sheer spectacle" of the October 28 incident, Ms. Finney risked harming the special education student and she risked subjecting the District to liability as a result. Moreover, it is also significant that the October 28 incident constituted a violation of Ms. Finney's Corrective Action Plan, which required Ms. Finney to follow special education procedures, as well as a violation of the special education student's behavior support plan.

Accordingly, we affirm the Chancellor's determination that the October 28, 2015 incident, standing alone, was sufficient to prove the ground of unprofessional conduct.

Although we concur with the Chancellor's determination that this incident alone is sufficient to prove the ground of unprofessional conduct, we shall also address the March 24, 2015 incident.

### B.  The March 24, 2015 Classroom Incident

Ms. Finney argues that she had already been punished for the March 24 incident; therefore, she cannot be disciplined twice for her actions on March 24. The trial court did not address whether Ms. Finney had been previously disciplined for this incident; instead, it ruled that the "cumulative nature" of Ms. Finney's disrespectful interactions with colleagues, which included the March 24 incident, constituted unprofessional conduct under the Tenure Act.

A public employee should not be disciplined twice for the same action, *Cope v. Tennessee Civil Serv. Comm'n*, No. M2008-01229-COA-R3-CV, 2009 WL 1635140, at *6 (Tenn. Ct. App. Jun. 10, 2009), and a written reprimand may constitute a disciplinary action if it disciplines the recipient for specific conduct. *See id*. at *8. To determine whether the written reprimand constituted a disciplinary action, the court should consider the written reprimand as well as the surrounding circumstances. *See id*. at *7-8.

The written reprimand for the March 24, 2015 incident states:

Account of Incident:

Mrs. Finney entered Mrs. Walker's classroom around 8:45 a.m. today. Mrs. Walker was at her Promethean board teaching a lesson to her class. Mrs. Finney proceeded to interrupt her and began talking loudly to her from across the classroom. Mrs. Finney was visibly angry in regards to a schedule change made by administration for a student who is in Mrs. Finney's class, but has inclusion in Mrs. Walker's classroom. Mrs. Finney said she was disappointed in the line of communication and the route it took. Other statements to this effect were said by Mrs. Finney. She stated that she believed in natural consequences and "there you have it." Then she quickly turned around and left the room. This incident took place in front of a classroom of first graders. Communication with a peer in regards to a student should have been made in private and at a time when students were not present.

This incident is in direct violation to the plan of corrective action as agreed upon on August 28, 2014. The area of concern cited is the following:

*Unprofessional conduct as demonstrated by: Addressing any staff – including professional educators, outside consultants, and/or any school or district level supervisors in a disrespectful tone – either in person or by email/written communication; Lack of respect for school and district personnel as evidenced by body language; Negative attitude; and Lack of support for administrative decisions – at the district and State levels.*

Corrective Action Goal: *To communicate with all school personnel – especially other professionals – in a manner that demonstrates mutual respect and adheres to acceptable professional boundaries.*

Lisa Burgin, principal of Moore Elementary, signed the letter, and Ms. Finney signed it below the statement, "I have received and understand the violation stated above."

The possible disciplinary action for violating Ms. Finney's Corrective Action Plan is stated in the plan:

> At the end of this corrective action plan, a meeting will be held to review the outcomes of the plan; this meeting will occur by May 22, 2015. At that time, Nedra Finney will be notified of the recommendation, which may include: concluding the corrective action plan, continuing the corrective action plan, or ending the corrective action plan as it was unsuccessful. In the latter instance, procedures for dismissal would begin.

Considering the foregoing, we have determined that the written reprimand did not constitute disciplinary action. Instead, it served as documentation that (1) Ms. Finney violated her Corrective Action Plan and (2) school administrators discussed this violation with Ms. Finney to encourage her "[t]o communicate with all school personnel – especially other professionals – in a manner that demonstrates mutual respect and adheres to acceptable professional boundaries." Because the written reprimand did not constitute disciplinary action, the March 24 incident may serve as a ground for dismissal based on unprofessional conduct.

Ms. Finney does not dispute that she interrupted Ms. Walker's class to express her displeasure with an administrative decision, which occurred in the presence of the students in the classroom. Ms. Finney merely disputes Ms. Walker's account of exactly what Ms. Finney said and the tone of voice Ms. Finney used, which Ms. Finney claims was not angry.

Tennessee Code Annotated section 49-5-501(3)(D) provides that unprofessional conduct is "[d]isregard of the teacher code of ethics…in such manner as to make one obnoxious as a member of the profession." The Teacher Code of Ethics states that a teacher must strive to earn "the respect and confidence of one's colleagues…." Tenn. Code Ann. § 49-5-1002(2). Likewise, Ms. Finney's Corrective Action Plan required her to "communicate with all school personnel—especially other professionals—in a manner that demonstrates mutual respect and adheres to acceptable professional boundaries."

Simply put, Ms. Finney's conduct on March 24 was disrespectful to her colleague; however, the Chancellor did not determine that the March 24 incident, standing alone, constituted unprofessional conduct. Rather, the court determined that the "cumulative nature of Ms. Finney's improper interactions with her students, and between Ms. Finney and her colleagues [met] the statutory burden to prove 'unprofessional conduct.'" There is ample testimony in the record to support this determination.

For example, Jenny Dugger Williams, a school psychologist, and Mary Oddo, a speech pathologist, both at Moore Elementary, testified that they frequently heard Ms. Finney yelling at her students, some of whom had sensory issues that caused them to

become more anxious with loud noises. Additionally, Ms. Oddo testified that it was not uncommon for Ms. Finney to insult her colleagues, referring to Ms. Herren, the special education supervisor, as "our fearful leader" and questioning Ms. Oddo's professional qualifications. Likewise, Ms. Burgin, principal of Moore Elementary, testified that when Ms. Finney was suspended for three days following an incident with Ms. Oddo, Ms. Finney exclaimed in the hallways, "Hello friends. Think of me because I have just been suspended for three days... Mary Oddo complained about me and now I am suspended."

Accordingly, we affirm the chancery court's determination that the cumulative nature of Ms. Finney's numerous disrespectful interactions with colleagues and students supports the finding of unprofessional conduct.

### C. The May 11, 2015 Hallway Restraint Incident

Ms. Finney argues that she cannot be disciplined for the alleged restraint on May 11, 2015 because she received a three-day suspension for this incident. She also contends the evidence does not support a finding that she restrained the student or that her actions constituted unprofessional conduct.

The Tenure Act explicitly provides that for suspensions of three days or less, "the director [of schools] may not impose any additional punishment beyond that described in the notice of suspension." Tenn. Code Ann. § 49-5-512(d)(4). It is undisputed that Ms. Finney received a three-day suspension for the May 11, 2015 incident. Therefore, the May 11, 2015 incident cannot serve as a ground for dismissal.

However, Ms. Finney's behavior on May 11 is relevant because she was subject to the Corrective Action Plan when it occurred. Moreover, her conduct on this and other occasions may be considered when determining the appropriate disciplinary action. *See Kelly v. Tennessee Civil Serv. Comm'n*, No. M1999-00168-COA-R3-CV, 1999 WL 1072566, at *4 (Tenn. Ct. App. Nov. 30, 1999) ("While prior disciplinary actions have no bearing on whether an employee has engaged in work-related conduct that warrants discipline, an employee's prior conduct, both good and bad, can be considered when determining what the appropriate disciplinary action should be."). Furthermore, as this court has commented:

An employee cannot be disciplined a second time for the same offense, but previous offenses and the penalties may be considered in determining what is the appropriate penalty for a subsequent offense. It would be nonsensical for the appointing authority to be prohibited from considering that this appellant was disciplined five times previously for the same type of misconduct as he committed in this case as well as on four other occasions and that the previous relatively slight penalties imposed upon him had little if any deterrent or rehabilitative effect on him. The Commission was

correct in considering appellant's entire record in determining that dismissal was appropriate.

*Maasikas v. Metro. Gov't, Nashville & Davidson Cty.*, No. M2002-02652-COA-R3-CV, 2003 WL 22994296 at \*7 (Tenn. Ct. App. Dec. 22, 2003) (quoting *London v. Parkway and Park Comm'n*, 503 So.2d 556, 557 (La. Ct. App. 1987) (citing *Jarrett v. Capital Area Legal Servs. Corp., Inc*., 763 S.2d 698 (La. Ct. App. 2000)).

As to Ms. Finney's conduct on May 11, 2015, the evidence supports a finding that Ms. Finney illegally restrained a special education student. Betsy Bagsby-Disch, the District's expert witness, testified that she is the District's Nonviolent Crisis Intervention instructor for the Crisis Prevention Institute, and it is her job to certify professionals in the District in non-violent crisis intervention and child restraint. After viewing the video of the incident, she testified "with no doubt" that Ms. Finney used a restraint. Tennessee Code Annotated section 49-10-1304 states that "[a] student receiving special education services…may be restrained or isolated only in emergency situations" and only when the child's IEP provides for the use of a restraint. There is no evidence that Ms. Finney was responding to an emergency situation, and furthermore, it is undisputed that the student's IEP did not provide for the use of a restraint.

### D. Dismissal

If a statutory ground is proven, and the ground of unprofessional conduct has been proven in this case, the court must determine whether the teacher's conduct warrants the drastic action of dismissal. *See Ripley*, 293 S.W.3d at 161. In making that determination, the court examines prior conduct and prior disciplinary actions. *Id.*; *Kelly*, 1999 WL 1072566, at \*4; *Tennessee Dep't of Human Servs. v. Tennessee Civil Serv. Comm'n*, No. 01A019504CH00143, 1995 WL 581086, at \*4 (Tenn. Ct. App. Oct. 5, 1995).

Ms. Finney was placed on a Corrective Action Plan for the 2014-2015 and the 2015-2016 school years for interacting with colleagues in an unprofessional manner and for failing to follow special education laws and procedures. The goals of the plan were

A. To create a positive school climate where respect between educators, administrators and staff is the norm.
B. To communicate with all school personnel—especially other professionals—in a manner that demonstrates mutual respect and adheres to acceptable professional boundaries.
C. To adhere to required district, state, and federal procedures as expected of all personnel.

Moreover, the plan served as notice upon Ms. Finney that future violations could result in dismissal.

The testimony in the record supports the Chancellor's finding that Ms. Finney violated her Corrective Action Plan on March 24, 2015 by interacting with a colleague in an unprofessional manner; that on May 11, 2015 she failed to follow district, state and federal procedures by using an improper restraint; and other evidence in the record supports the finding that Ms. Finney violated the plan on October 28, 2015, by refusing to follow a student's behavior support plan.

For the foregoing reasons, we affirm the disciplinary decision to terminate Ms. Finney's employment as a tenured teacher.

## IN CONCLUSION

The judgment of the trial court is affirmed and this matter is remanded with costs of appeal assessed against Nedra Finney.

_____
FRANK G. CLEMENT JR., P.J., M.S.