**FREEMAN INDUSTRIES LLC**

v.

**EASTMAN CHEMICAL COMPANY, et al.**

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

Nov. 8, 2006 Session.

Nov. 30, 2006.

Permission to Appeal Denied by
Supreme Court April 23, 2007.

Gordon Ball, Knoxville, Tennessee, for the Appellant, Freeman Industries LLC.

William T. Gamble, Kingsport, Tennessee, for the Appellee, Eastman Chemical Company.

S. Morris Hadden, Kingsport, Tennessee, for the Appellees, Hoechst GmbH; Nutrinova Nutrition Specialties & Food Ingredients, GmbH; Nippon Goshei Industries, Ltd.; and Daicel Chemical Industries, Ltd.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

The issue presented in this case is whether the plaintiff can amend its complaint on remand to the trial court after the Supreme Court affirmed dismissal of the plaintiff's claims on interlocutory appeal. Freeman Industries LLC filed a two-count complaint, alleging unjust enrichment and violations of the Tennessee Trade Practice Act ("TTPA"), Tenn.Code Ann. § 47–25–101, *et seq.* (2001). The trial court granted defendants' motion to dismiss the TTPA claim but denied a motion for summary judgment on the unjust enrichment claim. On interlocutory appeal, the Court of Appeals affirmed as modified, and the Supreme Court granted permission to appeal. The Supreme Court affirmed in part and reversed in part and remanded for further proceedings consistent with its opinion. In its opinion, the Court established a new pleading standard for TTPA claims, then held that Freeman's complaint did not state a cause of action under the new standard. The Court further held that the trial court erred in denying the defendants' motion for summary judgment on the unjust enrichment claim. On remand, the trial court denied Freeman's motion to amend its complaint. After careful review, we hold that the trial court abused its discretion by denying Freeman's motion. Accordingly, we reverse the decision of the law court and remand.

### I. Background

The long and tedious path of this lawsuit, which is now before this Court for the second time, began on September 21, 2001, when Freeman Industries LLC ("Freeman") filed a class action complaint in Sullivan County Law Court. Freeman, a New York corporation with its principal place of business in New York, named six defendants in its complaint. However, the following January, Freeman amended its complaint, narrowing the list of defendants to five. Remaining as defendants in the

suit were Eastman Chemical Company ("Eastman"); Hoechst GmbH; Nutrinova Nutrition Specialties & Food Ingredients, GmbH; Nippon Goshei Industries, Ltd.; Daicel Chemical Industries, Ltd.; and Daicel Chemical Industries, Ltd. (collectively the "Defendants"). Of the Defendants, Eastman is the only company that is headquartered in the United States; it is a Delaware corporation whose principal place of business is in Kingsport, Tennessee.

In its First Amended Class Action Complaint ("Complaint"), Freeman asserted two claims against the Defendants: 1) unjust enrichment; and 2) violation of the Tennessee Trade Practices Act, Tenn.Code Ann. § 47–25–101, et seq. (2001).[1] Freeman also sought class certification for all others similarly situated in 35 states (the "Class States"), including New York, but not including Tennessee.

These allegations are based on the price-fixing of sorbates, a widely-used food preservative. Sorbates are added to high-moisture and high-sugar products in small quantities to slow the growth of mold. The Defendants manufacture sorbates that were marketed, distributed, and sold in Tennessee and the Class States. Freeman has been an indirect purchaser of sorbates since 1979, during which time the company bought products containing sorbates from supermarkets in New York. Freeman had no direct transactions with the Defendants.

To restate the procedural history of this case following the filing of Freeman's Complaint, we rely on the Tennessee Supreme Court's summary of events:

Between 1998 and 2001, each defendant pleaded guilty to fixing the prices of sorbates in violation of the Sherman Antitrust Act.[2] The defendants also have settled federal lawsuits brought by a nationwide class of direct purchasers as well as lawsuits brought by indirect purchasers in fourteen states, including Tennessee, and the District of Columbia.

* * *

The trial court granted the defendants' motion to dismiss Freeman's TTPA claim. The trial court concluded that the TTPA does not apply to indirect purchasers or transactions occurring outside of Tennessee. The trial court denied the defendants' motion for summary judgment as to Freeman's unjust enrichment claim.

On interlocutory review, the Court of Appeals concluded that although indirect purchasers may recover under the TTPA, the act does not apply to indirect purchasers who are not "Tennessee consumers." The Court of Appeals further concluded that Freeman could not recover under the TTPA because it failed to establish that it "had a transaction *in Tennessee* that was substantially affected by the defendants' illegal conduct." With respect to Freeman's unjust enrichment claim, the Court of Appeals held that a plaintiff is not required to confer a direct benefit upon a defendant to proceed with a claim for unjust en-

---

**1.** Tennessee Code Annotated § 47–25–101 provides as follows: "All arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this state, or in the manufacture or sale of articles of domestic growth or of domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article, are declared to be against public policy, unlawful, and void."

**2.** See 15 U.S.C. § 1 (1997).

richment. The Court of Appeals therefore modified the portion of the trial court's judgment that held that the TTPA is not applicable to indirect purchasers and affirmed the trial court's judgment in all other respects.

*Freeman Industries, LLC v. Eastman Chemical Co.*, 172 S.W.3d 512, 516 (Tenn. 2005).

After granting Freeman's request for permission to appeal, the Supreme Court affirmed in part and reversed in part this Court's opinion, and remanded the case to the trial court "for further proceedings consistent with [the Supreme Court's] opinion." *Id.* at 526. In its opinion, the Supreme Court held that "an indirect purchaser may bring an action under Tennessee Code Annotated section 47–25–106 for conduct in violation of the TTPA even though the indirect purchaser is a nonresident of this state."[3] *Id.* at 520. The Court then established a new standard for determining whether a case falls within the scope of the TTPA. Rejecting any test focusing upon the anticompetitive conduct of the defendant in a TTPA case, including the test applied by this Court in our previous opinion, the High Court said instead that the test should be "whether the alleged anticompetitive conduct affects Tennessee trade or commerce to a substantial degree."[4] A conduct-based test, the Court said, would not serve the purpose of the TTPA to "protect the state's trade or commerce affected by the anticompetitive conduct." *Id.* at 522–23.

The Court then reviewed Freeman's Complaint under the new standard it had articulated. It noted that the allegations in Freeman's Complaint "primarily relate to the defendants' actions in conspiring and implementing the conspiracy to fix the prices of sorbates." *Freeman Industries, LLC,* 172 S.W.3d at 524. The Court continued:

> The focus under the substantial effects standard, however, is not on the anticompetitive conduct itself but on the effects of the conduct on Tennessee commerce. While Freeman alleged that Eastman took orders and implemented sales to customers at the new prices from Tennessee, we do not believe that this bare allegation without more is sufficient to establish that Tennessee commerce was substantially affected. Furthermore, Freeman fails to establish how the defendants' anticompetitive conduct affected Tennessee commerce to a substantial degree even though the conduct resulted in Freeman paying higher prices to retailers for items containing sorbates. To the contrary, there is no indication that the items that Freeman purchased contained sorbates manufactured by Eastman, the lone defendant with ties to Tennessee. Therefore, we conclude that Freeman's claim does not fall within the scope of the TTPA and that the trial court properly granted the defendants' motion to dismiss Freeman's claim.

*Id.*

The Supreme Court also held that the trial court erred in denying the Defen-

---

**3.** Tennessee Code Annotated § 47–25–106 states that "[a]ny person who is injured or damaged by any such arrangement, contract, agreement, trust, or combination described in this part may sue for and recover, in any court of competent jurisdiction, from any person operating such trust or combination, the full consideration or sum paid by the person for any goods, wares, merchandise, or arti-

cles, the sale of which is controlled by such combination or trust."

**4.** The Court noted that this same "substantial effects" standard is used by federal courts in evaluating claims under the Sherman Antitrust Act. *Freeman Industries, LLC,* 172 S.W.3d at 523.

dants' motion for summary judgment on Freeman's unjust enrichment claim. *Id.* at 526. In its conclusion, the Court stated in pertinent part as follows:

> We conclude that although Freeman may bring a claim against the defendants under the TTPA as an indirect purchaser, the conduct of which Freeman complains does not fall within the scope of the act because Tennessee commerce was not substantially affected by the conduct.... We further hold, however, that the trial court erred in declining to grant the defendants' motion for summary judgment as to the unjust enrichment claim.... Accordingly, we affirm the judgment of the Court of Appeals in part and reverse in part, and we remand the case to the trial court for further proceedings consistent with this opinion.

*Id.*

On remand, Freeman filed a motion for leave to amend its Complaint in order to plead its TTPA claim under the Supreme Court's new "substantial effects" standard.[5] The trial court held a hearing on December 14, 2005, during which the judge admitted to being confused about the language of the Supreme Court's decision in this case:[6]

> Counsel, for over 28 and a half years ... the Appellate Courts, both the Court of Appeals and the Supreme Court of Tennessee, has put this magic language in: "We remand the case to the trial court for further proceedings consistent with this opinion." Now, I'm sure every appellate judge, including Justice Janice Holder here, that was absolutely clear in their mind when they put that phrase in there. They knew what they were talk-

ing about. And I guarantee you for 150 trial judges across the state of Tennessee they're mystified on at least half the cases that come back. I don't know what they meant with that. It appears to me the case is over, and that's what I'm holding.... However, I will hold that if some Appellate Court holds that I had jurisdiction to amend at this point in time, I'll grant the amendment....

The trial court entered its order dismissing both of Freeman's claims with prejudice and denying Freeman's Motion to Amend on January 23, 2006. Freeman appeals from the denial of its Motion to Amend; it does not appeal the trial court's dismissal of its unjust enrichment claim.

## II.  Issue Presented

The sole issue presented for our review is whether the trial court erred in denying Freeman's Motion to Amend after the case was remanded to the trial court by the Supreme Court.

## III.  Standard of Review

■ Our standard of review for this issue is an abuse of discretion standard. Thus, the trial court has the discretion to grant or deny a motion to amend, and this court will reverse the decision only for an abuse of discretion. *Merriman v. Smith,* 599 S.W.2d 548, 559 (Tenn.Ct.App.1979). According to the Tennessee Supreme Court, "A trial court abuses its discretion only when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001) (internal quotations omitted).

---

**5.** Freeman did not seek a rehearing by the Supreme Court before the case was remanded to the trial court.

**6.** A transcript of the judge's findings during this hearing was attached as an exhibit to the trial court's Order of Dismissal With Prejudice, which was entered on January 23, 2006.

## IV. Analysis

■ Freeman asserts that the trial court erred by not allowing Freeman to amend its Complaint pursuant to Rule 15.01 of the Tennessee Rules of Civil Procedure after the case was remanded by the Tennessee Supreme Court. As a preliminary matter, we note that this case deals with an interlocutory appeal, not a final judgment. Thus, we find the Defendants' arguments that Freeman was required to seek relief via Rule 59 or Rule 60 to be without merit. See Tenn. R.App. P. 59–60. Freeman properly requested the trial court's permission to amend its Complaint under Rule 15.01.

■ Pursuant to Rule 15.01, Freeman did not have the right to amend its Complaint as a matter of course because the Defendants had already filed responsive pleadings; therefore, the amendment could only have been made with the written consent of the Defendants, who were unwilling to grant their consent, or by leave of court. Rule 15.01 provides in pertinent part that:

A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has been set for trial, the party may so amend it at any time within 15 days after it is served. Otherwise a party may amend the party's pleadings only by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires.

Tenn. R. Civ. P. 15.01. Tennessee law has a history of favoring amendments, as noted by the Supreme Court and reflected in this state's Rules of Civil Procedure. The Court stated that the Rules of Civil Procedure "were designed to simplify and ease the burden of procedure under the some-

times harsh and technical rules of common law pleading." *Branch v. Warren*, 527 S.W.2d 89, 91 (Tenn.1975). Regarding amendments in particular, the Court has adopted an expansive view that favors the party seeking to amend:

Rule 15.01 provides that leave (to amend) shall be freely given when justice so requires. This proviso in the rules substantially lessens the exercise of pre-trial discretion on the part of a trial judge. Indeed, the statute (T.C.A. § 20–1505) which conferred a measure of discretion on trial judges was repealed and Rule 15 stands in its place and stead. That rule needs no construction; it means precisely what it says, that 'leave shall be freely given.'

*Id.* at 91–92.

■ A plethora of cases illustrates the willingness of Tennessee courts to permit amendments under Rule 15.01. See *Branch v. Warren*, 527 S.W.2d 89 (Tenn. 1975); *Tennessee Dept. of Mental Health & Mental Retardation v. Hughes*, 531 S.W.2d 299 (Tenn.1975); *Matus v. Metropolitan Govt. of Nashville*, 128 S.W.3d 653 (Tenn.Ct.App.2003); *Coker v. Redick*, No. 01–A–01–9410CH00500, 1995 WL 89706 (Tenn.Ct.App. M.S., filed March 3, 1995); *HMF Trust v. Bankers Trust Co.*, 827 S.W.2d 296 (Tenn.Ct.App.1991); *Harris v. St. Mary's Medical Center*, 726 S.W.2d 902 (Tenn. 1987); *Garthright v. First Tennessee Bank of Memphis*, 728 S.W.2d 7 (Tenn. Ct.App.1986). A trial court does not abuse its discretion by granting leave to amend a complaint when the amendment is "necessary to bring before the Court an issue which, if found in favor of the pleader, would be conclusive of the case." *Liberty Mutual Ins. Co. v. Taylor*, 590 S.W.2d 920, 921 (Tenn.1979). Furthermore, we have said that "when the court grants a motion to dismiss for failure to state a claim, only extraordinary circumstances would prohib-

it the plaintiff from exercising the right to amend its complaint." *Richland Country Club, Inc. v. CRC Equities, Inc.*, 832 S.W.2d 554, 559 (Tenn.Ct.App.1991).

In the case at bar, the trial court correctly expressed a willingness to permit Freeman to amend its Complaint; however, it did not believe that it had the authority to allow such an amendment after the Supreme Court's remand. We disagree.

■ It is true that a trial court may not disregard or modify the opinion of an appellate court. See *Earls v. Earls*, No. M1999–00035–COA–R3–CV, 2001 WL 504905, at *3 (Tenn.Ct.App. M.S., filed May 14, 2001). However, a trial court is not necessarily powerless to conduct any proceedings on remand. This Court has reviewed the authority of a trial court on remand and found as follows:

> Once the mandate [from an appellate court] reinvests the trial court's jurisdiction over a case, the case stands in the same posture it did before the appeal except insofar as the trial court's judgment has been changed or modified by the appellate court.... [T]he trial court does not have the authority to modify or revise the appellate court's opinion, or to expand the proceedings beyond the remand order. The trial court's sole responsibility is to carefully comply with directions in the appellate court's opinion.

*Id.* (internal citations omitted).

In this case, the Supreme Court did not give particular instructions upon remand. It did not direct the trial court to enter an order dismissing Freeman's TTPA claim, nor did the Supreme Court enter a final judgment itself. See *Earls*, 2001 WL 504905, at *3. The High Court's instructions on remand were to conduct "further proceedings consistent with this opinion." Thus, it did not restrict the trial court's authority to allow an amendment to Free-

man's complaint, although the Court could have certainly done so.

We find the Supreme Court's holding in *Tennessee Dept. of Mental Health & Mental Retardation v. Hughes* to be particularly instructive. 531 S.W.2d 299 (Tenn. 1975). In that case, Mr. Hughes sued for damages after he was allegedly shot by Mr. Duck. The complaint asserted that Mr. Duck had either escaped from or been released from the Central State Psychiatric Hospital, where he was being held after pleading guilty to murder. *Id.* at 299–300. In addition to naming Mr. Duck as a defendant, Mr. Hughes also sued the Central State Psychiatric Hospital, the Tennessee Department of Health and Mental Retardation, the superintendent of the hospital, and the State Commissioner of Mental Health and Retardation on the theory of negligence. *Id.* All of the defendants except Mr. Duck filed a motion to dismiss, asserting sovereign immunity as a bar to Mr. Hughes' claim. *Id.* at 300. The trial court granted the motion as to the individual defendants, but denied the motion as to the hospital and the Department of Mental Health and Retardation. The trial judge held that the Tennessee Governmental Tort Liability Act operated to remove the immunity of the state agencies; however, the judge certified that question for an interlocutory appeal to the Supreme Court. *Id.* at 300.

After holding that the Governmental Tort Liability Act did not remove the state agencies' sovereign immunity, the High Court further stated:

> We now direct that the motion to dismiss be sustained upon the issue certified here. Nevertheless, a plaintiff, when a motion to dismiss has been sustained, is ordinarily entitled to amend, if in good conscience and within the applicable rules of law, he may do so. Wheth-

er counsel for appellee will or will not seek to amend his complaint in light of the ruling which we have made today, we, of course, cannot know. Since amendments to pleadings are ordinarily made in the trial courts, rather than the appellate courts, we remand the case for such further proceedings as may be necessary or appropriate.

*Hughes,* 531 S.W.2d at 301. Thus, our Supreme Court has recognized that after a motion to dismiss has been sustained by an appellate court, as is the case here, the party may amend its complaint to state a claim for which relief may be granted.

■ The Defendants cite the Supreme Court's opinion in *Harris v. Chern,* 33 S.W.3d 741 (Tenn.2000), as evidence that if the Court had intended to allow Freeman to amend its Complaint on remand, then the Court would have explicitly granted permission for Freeman to do so. We find this argument unconvincing. As we noted earlier, on remand a trial court is vested with authority to proceed with the case in accordance with the appellate court's instructions. The absence of specific language from the Supreme Court allowing Freeman to amend its Complaint on remand does not mean that the trial court is forbidden from granting leave to amend; such would only be the situation if the Supreme Court had directed entry of a judgment in the case or otherwise stated in unequivocal terms that Freeman was not entitled to amend its Complaint on remand. We find no such language in the Supreme Court's opinion or mandate in this case. Therefore, the Defendants' reliance on *Harris* is misplaced.

The Defendants also suggest that the Second Amended Complaint proposed by Freeman would be a futile amendment and that we should affirm the trial court's judgment on that basis. The Defendants assert that under Tennessee's conflicts of laws rules, New York law should govern this case, and therefore, no cause of action is available to Freeman. However, the trial court did not rule on the issue of which state's law applies to this lawsuit; thus, we believe it would be premature for us to make such a determination.

■ The Defendants make a second futility argument, asserting that Freeman's Second Amended Complaint does not contain any allegation that was not already rejected by the Supreme Court and that the amendment is therefore futile. After reviewing the allegations in Freeman's Second Amended Complaint, we cannot say, on the record before us, that the proposed amendment would be futile. Furthermore, the futility of an amendment is only one of several factors which should be examined by a trial court when deciding whether to grant or deny a motion to amend under Rule 15.01. Other considerations include: undue delay in filing; lack of notice to the opposing party; bad faith by the moving party; repeated failure to cure deficiencies by previous amendments; and undue prejudice to the opposing party. *Hall v. Shelby County Retirement Bd.,* 922 S.W.2d 543, 546 (Tenn.Ct.App.1995). We find no error in the trial court's determination to allow the amendment if an appellate court later held that it "had jurisdiction to amend."

The trial court believed that it lacked the authority to permit Freeman to amend its Complaint on remand. However, for the reasons discussed above, we have found that the trial court did indeed have the authority to grant Freeman's motion to amend. Because the trial court applied an incorrect legal standard in making its decision, we hold that the trial court abused its discretion by denying Freeman's motion.

### V. Conclusion

After careful review, we hold that the trial court abused its discretion by denying

Freeman's motion to amend its Complaint on remand. We reverse the judgment of the trial court and remand to permit Freeman to amend its Complaint to plead a cause of action under the newly established standard for TTPA claims and for further proceedings consistent with this opinion. All costs of appeal are taxed against the Appellees, Eastman Chemical Company; Hoechst GmbH; Nutrinova Nutrition Specialties & Food Ingredients, GmbH; Nippon Goshei Industries, Ltd.; Daicel Chemical Industries, Ltd.; and Daicel Chemical Industries, Ltd.