IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 3, 2019 Session

## STEPHANIE KELLER ET AL. v. ESTATE OF EDWARD STEPHEN McREDMOND ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 06-3004-IV, 07-0603-IV      Russell T. Perkins, Chancellor**

———————————————————

### No. M2019-00094-COA-R3-CV

———————————————————

In a previous appeal, we affirmed a trial court's decision to hold a party in contempt, but we vacated the award of compensatory damages. *Keller v. Estate of McRedmond*, No. M2013-02582-COA-R3-CV, 2018 WL 2447041, at *6 (Tenn. Ct. App. May 31, 2018). We remanded the case to the trial court for a calculation of the damages solely attributable to the contemptuous conduct. *Id.* On remand, the trial court entered an amended judgment. In this appeal, among other things, the contemnor argues that the amount of damages awarded lacks a sufficient evidentiary basis. Because the evidence does not preponderate against the amount of damages awarded, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., joined. RICHARD H. DINKINS, J., not participating.

Roger A. Maness, Clarksville, Tennessee, for the appellant, Louis A. McRedmond.

John P. Branham and W. Justin Adams, Nashville, Tennessee, for the appellees, Anita McRedmond Sheridan and Linda McRedmond Orsagh.

Richard K. Smith, Nashville, Tennessee, for the appellee, Estate of Edward Stephen McRedmond.

## OPINION

### I.

#### A.

For the third time, we review the circumstances surrounding the sale of a family business. *See In re Estate of McRedmond*, No. M2013-02582-COA-R3-CV, 2014 WL 6324283, at *21 (Tenn. Ct. App. Nov. 14, 2014), *aff'd in part, rev'd in part sub nom. Keller v. Estate of McRedmond*, 495 S.W.3d 852 (Tenn. 2016) ("*Keller I*"); *Keller v. Estate of McRedmond*, No. M2013-02582-COA-R3-CV, 2018 WL 2447041 (Tenn. Ct. App. May 31, 2018) ("*Keller II*"). We briefly recount the salient facts.[1]

Ten McRedmond siblings owned shares in McRedmond Brothers Incorporated ("MBI"). MBI primarily "owned and operated a grease business that purchased used grease for resale to animal feed manufacturers." *Keller II*, 2018 WL 2447041, at *1. Two brothers, Louis Anthony McRedmond ("Louie") and Edward Stephen McRedmond ("Stephen"), jointly managed the company and owned the majority of the stock. *Id.*

Disagreements between Louie and Stephen over management of MBI eventually led to the dissolution of the company. On September 22, 2008, with the agreement of the sibling owners, the Davidson County Chancery Court appointed a receiver to take control of MBI's assets and propose a dissolution plan. In the meantime, the court ordered MBI's employees, including Louie, to "continue to conduct the Grease Business in the ordinary course of business, reporting directly to the Receiver." *Id.*

Among other things, the receiver proposed offering the grease business for sale as a going concern to the current owners. The court approved the receiver's plan. Two bids were submitted. Louie bid $360,000 plus a dollar-for-dollar amount for the cash-on-hand. Stephen and two sisters (the "Buyers") submitted a joint bid of $758,000. The receiver accepted the higher bid. *Id.*

On March 25, 2009, the Buyers and the receiver executed an asset purchase agreement. The agreement reflected the parties' understanding that the grease business assets were being sold as a going concern. *Id.* The trial court approved the sale and, pending the closing, ordered the current officers and directors of MBI to "[c]onduct the Business only in the usual, regular and ordinary course, preserve the organizational structure of the Business, and preserve intact for the Buyers the goodwill of the Business

---

[1] A more detailed factual and procedural background is set forth in *Keller v. Estate of McRedmond*, 495 S.W.3d 852, 855-66 (Tenn. 2016).

2

and the present relationship between the Business and the employees, suppliers, clients, customers, and others having business relations with the Seller." *Id.* at *2. Immediately after the April 8 closing, Louie resigned as an officer, director, and employee of MBI and began to operate a competing grease business, L.A. McRedmond, Incorporated. *Id.*

Meanwhile, the Buyers discovered that Louie had not been conducting business as usual. Instead, he had been preparing to open his own competing grease business. Louie told MBI's customers and suppliers that MBI was closing and solicited their business for his company. He also used MBI employees to help him acquire equipment for his new company. In the days leading up to the closing, Louie depleted MBI's grease inventory and stopped making the customary sales. *Id.*

The court allowed the Buyers to assert and pursue claims against Louie for breach of fiduciary duty, intentional interference with business relations, and violation of court orders. *Id.* After a bench trial, the trial court ruled in favor of the Buyers and awarded $375,000 in aggregate compensatory damages. The court certified its order as final under Tennessee Rule of Civil Procedure 54.02. *Id.* at *2-3. And Louie filed his first appeal. *See Keller I*, 495 S.W.3d at 864.

B.

This Court reversed the trial court's decision, holding that the Buyers, as individual shareholders, lacked standing to assert the claims alleged. *Id.* at *20. Applying then-current Tennessee law for determining whether a shareholder claim is direct or derivative, we determined that all three claims were derivative. *Id.* at *17-20.

The Buyers sought further review. Our supreme court granted permission to appeal and adopted a new analytical framework for shareholder actions. *See Keller I*, 495 S.W.3d at 877. Applying the new approach, the supreme court affirmed our holding that the Buyers lacked standing to assert a claim for breach of fiduciary duty to MBI or intentional interference with business relations. *Id.* at 880-81. But the supreme court held the Buyers did have standing to pursue the civil contempt claim against Louie for any actual damages arising out of his violation of the trial court's orders. *Id.* at 879-80. The supreme court then remanded the case to this Court to allow us to address any remaining issues properly raised by the parties in the first appeal that had not yet been decided. *Id.* at 882 & n.38.

In *Keller II*, we considered three issues: (1) whether Louie intentionally violated the court's orders; (2) if so, whether the Buyers were harmed by his conduct; and (3) whether the damages award was supported by the evidence. *Keller II*, 2018 WL 2447041, at *3. We concluded that the evidence did not preponderate against the trial court's findings that Louie actually disobeyed the court's orders and that his disobedience

was willful.  *Id.* at *4-5.  We also affirmed the trial court's finding of actual harm.  *Id.* at *5.

But we were unable to adequately review the third issue—whether the damages award was supported by evidence in the record.  It appeared from the court's judgment that the court had "merge[d] all the damages for violating the Court's Orders, intentional interference with business relations, and breach of fiduciary duties" into one aggregate award.  *Id.* at *3.  So we remanded the case for the trial court to calculate the amount of the Buyers' direct damages attributable solely to Louie's willful violation of the court's orders.  *Id.* at *6.  We also authorized the trial court to conduct a new evidentiary hearing on the issue of damages if necessary.  *Id.*

On remand, the court did not consider any new evidence.  In an amended judgment, the court clarified that the language in the original judgment was not meant to imply that the court had merged three separate damage awards.  Rather, "given that one set of facts constitute the predicate for the harm suffered by the Buyers, the Court concluded that the Buyers had proven the same $375,000 in damages under each of these independent and alternate theories."

## II.

In this appeal, Louie again argues that the damages award was not supported by the evidence.  He also complains that the court's amended judgment cannot be reconciled with its original judgment.

### A.

The first issue, addressed to the sufficiency of the evidence, requires consideration of both the measure and the amount of damages.  We review the measure of damages de novo.  *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn. Ct. App. 1998), *abrogated by Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102 (Tenn. 2016).  Here, the proper measure of damages for injuries from the contemptuous conduct was "the actual injury sustained as a result of the contempt."  *Overnite Transp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 511 (Tenn. 2005).  The Buyers' actual injury was the diminished going concern value of the grease business assets.  *See Keller II*, 2018 WL 2447041, at *5.

Louie argues that the trial court applied the "benefit of the bargain rule" in assessing damages.  *See Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 233 (Tenn. Ct. App. 1976).  But "benefit of the bargain" is the proper measure of damages for fraudulent misrepresentation.  *Id.*  It "compels the defendant to make good on the false representations" by compensating the other party for the difference between the value received and the value promised.  *Id.*  In assessing the damages, we conclude the trial

4

court properly focused on how "Louie's violations of the Court's orders actually harmed the Buyers by diminishing the grease business's value as a 'going concern.'"

The amount of damages awarded is a question of fact. *Beaty*, 15 S.W.3d at 829. Because this was a bench trial, we presume that the trial court's factual findings are correct unless the evidence preponderates against them. Tenn. R. App. P. 13(d).

Damages must be proven. *Inman v. Union Planters Nat'l Bank*, 634 S.W.2d 270, 272 (Tenn. Ct. App. 1982). But proof of the amount of damages need not be exact. *See Provident Life & Acc. Ins. Co. v. Globe Indem. Co.*, 3 S.W.2d 1057, 1058 (Tenn. 1928) ("[T]he law does not require exactness of computation in suits that involve questions of damages growing out of contract or tort."); *Cummins v. Brodie*, 667 S.W.2d 759, 765 (Tenn. Ct. App. 1983) ("The courts will allow recovery even if it is impossible to prove the exact amount of damages . . . ."). Reasonable certainty will suffice. *Redbud Coop. Corp. v. Clayton*, 700 S.W.2d 551, 561 (Tenn. Ct. App. 1985). We will affirm a damages award if the record contains sufficient evidence for the fact finder "to make a fair and reasonable assessment of damages."[2] *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 230 (Tenn. Ct. App. 2006).

We conclude that the evidence at trial was sufficient to support the award of damages. Before the sale, MBI had $1.3 million in gross profits from grease sales. Proof at trial established that MBI's normal grease inventory ranged between 8 and 20 loads. And the company typically sold 6 loads a week to its largest customer plus a few more loads to others. At closing, MBI's records showed no incoming grease loads and only 1 or 2 loads scheduled for delivery to customers.[3] The grease inventory had been depleted. The new company set up by the Buyers to acquire the grease business had, at best, only 2 or 3 loads in inventory. With no product to sell, the new company was "paralyzed." It took four to six weeks to rebuild the inventory. Even then, the new company sustained an overall net loss. Gross sales fell from $6.4 million to $2 million. And the gross profit percentage plummeted from approximately 20 to 11 percent. Salaries paid to

---

[2] The Buyers argue that there is no record to review because Louie did not file an additional transcript or statement of the evidence on this appeal. Without a sufficient evidentiary record, our courts conclusively presume "that the parties presented sufficient evidence to support the trial court's judgment." *Ramsay v. Custer*, 387 S.W.3d 566, 568 (Tenn. Ct. App. 2012). But this is an appeal after a remand to the trial court for calculation of damages. *See Keller II*, 2018 WL 2447041, at *6. The trial court did not consider any new evidence, choosing to rely on the evidence at trial. And Louie provided the complete trial record in his previous appeal on this same issue. *See id.* at *3. Under these unique circumstances, we deem it appropriate to consider the trial record filed in the previous appeal. *Cf. Carmack v. Fid.-Bankers Tr. Co.*, 177 S.W.2d 351, 352 (Tenn. 1944).

[3] One load of acid oil was delivered to the Buyers' new company shortly after closing. Although Louie had ordered it for his new company, he allowed the Buyers' new company to accept delivery because he "didn't want to cause a big stink."

shareholders also declined from $227,794 to $60,200. This abrupt change in the company's fortunes is probative of diminished value. *Keller II*, 2018 WL 2447041, at \*5.

While the evidence could arguably support a different damage award, we cannot say that the evidence preponderates against the amount awarded. "Courts inevitably operate within a margin of error when calculating damages . . . ." *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 789 (Tenn. Ct. App. 2010). Here, the record is sufficient to support the trial court's decision.

B.

We find Louie's remaining complaints about the proceedings on remand unavailing. "[O]n remand a trial court is vested with authority to proceed with the case in accordance with the appellate court's instructions." *Freeman Indus. LLC v. Eastman Chem. Co.*, 227 S.W.3d 561, 568 (Tenn. Ct. App. 2006). We remanded this case for such further proceedings as the court deemed necessary to calculate the amount of direct damages attributable solely to Louie's contemptuous conduct. *See Keller II*, 2018 WL 2447041, at \*6. The court did not deviate from our mandate. *See Raleigh Commons, Inc. v. SWH, LLC*, 580 S.W.3d 121, 129 (Tenn. Ct. App. 2018), *perm. app. denied*, (Tenn. Apr. 15, 2019) ("Any proceedings on remand which are contrary to the directions contained in the mandate from the appellate court may be considered null and void.") (citation omitted). The court merely clarified the meaning of its original order. We conclude this was appropriate as "the trial court is the best interpreter of its own orders." *Richardson v. Richardson*, 969 S.W.2d 931, 935 (Tenn. Ct. App. 1997).

**III.**

The evidence does not preponderate against the trial court's award of $375,000 to compensate the Buyers for the actual harm caused by Louie's willful disobedience of the court's orders. So we affirm.

_____<br>W. NEAL MCBRAYER, JUDGE