IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 1, 2021 Session

## KIMBERLY MEDDERS V. LANDON NEWBY ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 16C3140     Kelvin D. Jones, Judge**

_____

### No. M2020-01094-COA-R3-CV

_____

An insurance company denied coverage for an accident its insured had with an uninsured/underinsured motorist because the insured had a "non-owner's" policy, and the car she was driving did not fit the definition of a "non-owned auto." The trial court concluded, following a bench trial on the bifurcated issue of coverage, that the insured's policy did not cover the accident, and the insured appealed. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Aldo J. Stolte, Nashville, Tennessee, for the appellant, Kimberly Medders.

Jaimee Suzanne Johnson, Hendersonville, Tennessee, for the appellee, UM Defendant Direct Insurance.

### OPINION

I. FACTUAL AND PROCEDURAL BACKGROUND

Kimberly Medders and Landon Newby were in an automobile accident on July 11, 2016. Sarah Newby was the owner of the car Mr. Newby was driving, and Ms. Medders filed a complaint asserting negligence against both Landon and Sarah Newby in an effort to recover damages for injuries she suffered as a result of the accident. Ms. Medders served the complaint on her insurance company, Direct Insurance Company ("Direct"), after discovering that the Newbys were uninsured. The Newbys did not defend or otherwise participate in the litigation. Direct defended Ms. Medders' complaint as an "unnamed

defendant," and Ms. Medders proceeded against Direct in an effort to obtain uninsured motorist coverage.

The vehicle Ms. Medders was driving at the time of the accident was a 2013 Volkswagen Jetta. Samuel Todd Tinnin and Ms. Medders were engaged to be married when the accident occurred, and Mr. Tinnin, who was employed by the used car company 24/7 Auto Sales, had acquired the Jetta from his employer to give Ms. Medders as a wedding gift. Mr. Tinnin acquired the Jetta on June 24, 2016, and a title was issued in his name on July 12, 2016. Ms. Medders and Mr. Tinnin were married on July 14, 2016. Both Mr. Tinnin and Ms. Medders had automobile insurance policies with Direct. Ms. Medders' policy was a non-owner's policy. Mr. Tinnin had an owner's policy, but the Jetta had not been added to his policy as a "covered" vehicle or a "replacement" vehicle before the accident occurred or at any time thereafter.

In the amended answer Direct filed in response to Ms. Medders' complaint, Direct denied coverage to Ms. Medders on the basis that the Jetta was not covered by either her non-owners policy or the separate policy issued to Mr. Tinnin. Direct requested a jury trial in its amended answer and, as an affirmative defense, it reserved the right to ask the court to sever the issue of coverage from the issue of liability.

Direct moved for summary judgment on the issue of coverage, which the trial court denied. Direct then moved to bifurcate the coverage portion of the trial from the liability portion, and the trial court granted this motion over Ms. Medders' objection. The court held a bench trial on the issue of coverage and concluded that the Jetta was not covered by either Ms. Medders' or Mr. Tinnin's policies with Direct and dismissed Ms. Medders' complaint. Ms. Medders moved to alter or amend the judgment, which the court denied.

Ms. Medders filed a notice of appeal in 2019. The Court of Appeals initially dismissed the appeal in 2020, concluding that the Court lacked subject matter jurisdiction because the trial court's order that Ms. Medders appealed did not comply with Tenn. R. Civ. P. 54.02 and was, therefore, not a final order. *Medders v. Newby*, No. M2019-00793-COA-R3-CV, 2020 WL 1972327, at *3 (Tenn. Ct. App. Apr. 24, 2020). After the case was remanded to the trial court, Ms. Medders moved to file an amended complaint for the purpose of demanding a jury trial on all issues. The trial court denied Ms. Medders' motion, but it issued a corrected order that complied with Tenn. R. Civ. P. 54.02. Ms. Medders then filed a timely notice of appeal. Ms. Medders asserts on appeal that the trial court erred by (1) bifurcating the coverage and liability aspects of the trial and denying her a jury trial on the issue of coverage; (2) ruling that her accident on July 11, 2016, was not covered by her non-owner's policy; and (3) denying her motion to amend her complaint after the Court of Appeals remanded the case back to the trial court in 2020.

II. ANALYSIS

A.  Bifurcation of Coverage from Liability

Ms. Medders asserts that she had a constitutional right to a trial by jury on all issues that involved questions of fact, including the issue of coverage, and that the trial court erred when it bifurcated the issues and held a bench trial on the issue of coverage.  Before addressing the issue of bifurcation, we note that when she filed her complaint, Ms. Medders did not demand a jury trial.  Rule 38.02 of the Tennessee Rules of Civil Procedure provides that "[a]ny party may demand a trial by jury of any issue triable of right by jury by demanding the same in any pleading specified in Rule 7.01 or by endorsing the demand upon such pleading when it is filed" or "by written demand . . .  within 15 days after the service of the last pleading raising an issue of fact."  Because she failed to request a jury trial as required by the Rules of Civil Procedure, Ms. Medders waived her right to demand that the coverage issue be decided by a jury.  *See* TENN. R. CIV. P. 38.05; *Ueber v. Ueber*, No. M2018-02053-COA-T10B-CV, 2019 WL 410703, at *6 (Tenn. Ct. App. Jan. 31, 2019); *Gribble v. Buckner*, 730 S.W.2d 630, 632-33 (Tenn. Ct. App. 1986).

In granting Direct's motion to bifurcate the issues of coverage and liability, the trial court wrote, in relevant part:

> It appears to the Court that the issues of coverage are so distinct and separable from the issues of liability that a trial of coverage alone may be had without injustice.  The issue of coverage has a complete and distinct set of facts from the issue of liability.  To present both to a jury at one trial will cause confusion for the jury and prejudice against [Direct].  The issue of coverage may be had as a complete and separate trial without injustice as once coverage issues are decided, Plaintiff may still proceed on the issue of liability.
>
> The risk of prejudice to [Direct] is high as evidence of insurance would be admissible only on the issue of coverage and will likely prejudice [Direct] in the minds of the jury on other issues.  Tennessee recognizes the risk of extreme prejudice by excluding any mention of insurance at trial by Tenn. R. Evid. 411 for purposes of negligence or other wrongful conduct.  This Court recognizes the potential for extreme prejudice against [Direct] and therefore, GRANTS [Direct]'s Motion to Bifurcate.

The Tennessee Supreme Court has written that, although a litigant may have a constitutional right to have material controverted issues submitted to a jury, "our constitution does not mandate that all such issues be submitted to the jury at the same time." *Ennix v. Clay*, 703 S.W.2d 137, 139 (Tenn. 1986); *see also Orlando Residence, Ltd. v. Nashville Lodging Co.*, 213 S.W.3d 855, 862 (Tenn. Ct. App. 2006).  However, a party that

has requested a jury trial is not entitled to a bifurcation of the issues if bifurcation is desired; it is up to "the sound discretion of the trial judge" whether to grant a party's request for bifurcation. *Ennix*, 703 S.W.2d at 139. As the *Ennix* Court explained,

> [T]he interests of justice will warrant a bifurcation of the issues in only the most exceptional cases and upon a strong showing of necessity. In making its decision the trial court should consider the possibility of juror confusion, the risk of prejudice to either party, and the needs of judicial efficiency. Above all, the issues at trial must not be bifurcated unless the issue to be tried is so distinct and separable from the others that a trial of it alone may be had without injustice. *Gasoline Products Co., Inc. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931).

*Id.* The facts of *Ennix* are distinguishable from the facts here. Both cases involved a motor vehicle accident; but the issues that were bifurcated in *Ennix* were liability and damages, *id.* at 140, not coverage and liability, as was the case here. The *Ennix* plaintiffs were injured in the accident but could not remember details of the crash due to amnesia that they suffered as a result of the accident. *Id.* Because the issue of damages was bifurcated from the issue of liability, the jury considering liability heard no medical testimony regarding either the severity of the plaintiffs' injuries or the likelihood of their developing amnesia as a result of those injuries. *Id.* The Court found that the issues of liability and damages "were so interwoven that bifurcation was improper" because "the jury was denied relevant information which was material to the determination of the credibility of these witnesses." *Id.* Thus, the Court held, "[a] separation of [the damages and liability] issues in a trial is inappropriate where the nature of the plaintiff's injuries could have an important bearing on the issue of liability." *Id.*

In this case, by contrast, the issue of coverage is not dependent on the issue of liability. Whether Ms. Medders was covered by either her or Mr. Tinnin's auto policy is a question of contract, whereas the issue of liability is a question of negligence. No facts about the accident itself have any relevance to the coverage issue, and no facts concerning coverage have any relevance to the accident or either of the Newbys' liability to Ms. Medders. Moreover, as Direct points out, Direct could be prejudiced if a jury tried the coverage and liability issues simultaneously because the jury would know insurance was an issue and could be improperly influenced to render a favorable verdict for Ms. Medders. The potential for this sort of prejudice is recognized by Tennessee Rule of Evidence 411, which states that when negligence or wrongful conduct is at issue, "[e]vidence that a person was or was not insured against liability is not admissible."[1]

---

[1]Recognizing the possibility of prejudice against an insurance company, the Tennessee legislature allows an insurance company providing uninsured motor vehicle coverage to defend an action in the name of the uninsured owner or operator rather than in the name of the insurance company itself. *See* Tenn. Code Ann. § 56-7-1206(a).

A trial court abuses its discretion "when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citing *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 42 (Tenn. 2005)); *see also State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). The abuse of discretion standard does not allow a reviewing court to second-guess the trial court's judgment; nor does it allow the reviewing court to substitute its discretion for that of the lower court. *Lee Med., Inc.*, 312 S.W.3d at 524.

Applying the standards governing bifurcation that the Supreme Court set forth in *Ennix v. Clay* to the facts of this case, we hold that the trial court did not apply an incorrect legal standard, reach an illogical or unreasonable decision, or base its decision to bifurcate the issues on a clearly erroneous assessment of the evidence. Ms. Medders fails to show that the trial court abused its discretion in granting Direct's motion to bifurcate the issues of coverage and liability. Accordingly, we affirm the trial court's decision to bifurcate.

B. Coverage of Ms. Medders' Accident

Ms. Medders contests the trial court's holding that her automobile policy with Direct, a non-owner's policy, did not provide coverage for the injuries she sustained in the accident. Her policy defined a "non-owned vehicle" as any "auto that is not owned by, registered to, or furnished or available for the regular use of you," and she contends that the Jetta did not belong to her when the accident occurred and that it was not furnished or made available for her regular use, such that her non-owner's auto policy should provide her with uninsured motorist coverage.

A representative from Direct testified by deposition and described a non-owner's policy as follows:

> A non-owners policy is a policy that doesn't have a specific vehicle listed on the declarations page. Typically, the policy comes into play in the form of excess coverage over whatever vehicle the owner of the policy was operating.
>
> . . . .
>
> There are certain folks who maybe have marks on their driver's records, or they have other run-ins with the law that would cause their premiums to be at a higher rate if they had a vehicle that they owned and tried to have insured.

However, they may have a driver's license and still need to drive vehicles. So this is a form of coverage that's available to them if they don't own a vehicle themselves.

No vehicle was listed in the "Vehicle Information" section of the Declarations Page of Ms. Medders' policy. Instead, the language "Non-Owner" was written in the spaces for "Make," "Model," and "Body" of the "Vehicle Information" section of the Declarations Page. Ms. Medders' policy provided coverage for a "non-owned" vehicle, defined as "any auto that is not owned by, registered to, or furnished or available for the regular use of, you, a family member, or a resident, while in the legal custody of, or while being operated with the owner's permission by, you, a family member or a resident." "Covered auto" was defined as "any auto shown on your Declarations Page, unless you have asked us to delete that auto from the Policy; or a newly acquired auto."

Ms. Medders' policy defined "own," "owned," and "ownership" as "to hold legal title to the auto," "to have legal possession of an auto . . . subject to a lien or security agreement," or "to have legal possession of an auto that is leased or rented to that person under a written contract for a continuous period of six (6) months or more." Similarly, "owner" was defined as the person who "holds legal title to the auto," "has legal possession of an auto . . . subject to a lien or security agreement," or "has legal possession of an auto that is leased or rented to that person under a written contract for a continuous period of six (6) months or more." The policy defined a "regular operator" as "someone who drives a covered auto more than 30 times per year or on a frequent and regular basis." "Family member" was defined as a person who "resides with you and is related to you by blood, marriage, [or] adoption . . . ."

Evidence was also introduced regarding Mr. Tinnin's automobile policy. Unlike Ms. Medders' policy, Mr. Tinnin had an owner's policy, and he had four vehicles listed on his Declarations Page. The Jetta was not one of the vehicles identified as a covered vehicle. The definitions in Mr. Tinnin's policy were the same as those in Ms. Medders' policy. It is undisputed that Mr. Tinnin did not contact Direct and ask that the Jetta be added to his automobile policy as an "additional auto" or "replacement auto."

The evidence showed that Mr. Tinnin purchased the Jetta prior to the accident and that the title was issued in his name one day following the accident. Mr. Tinnin testified during his deposition that he worked for his brother, who owns 24/7 Auto Sales, and that he arranged for the company to purchase the Jetta at an auction on June 24, 2016. Mr. Tinnin subsequently purchased the Jetta from 24/7 Auto Sales for Ms. Medders' use. Mr. Tinnin testified:

Well, we were fixing to get married, of course, and I was at the auction with my brother and I had been saving money, of course, and I just felt like it was a good deal and it was the right car for her [Ms. Medders] so I purchased it.

Mr. Tinnin was asked whether he ever drove the Jetta and he replied, "No, I didn't drive it. It was for her [Ms. Medders]." Mr. Tinnin was asked whether the Jetta was a surprise for Ms. Medders or whether she knew she was getting it, and he replied, "We had talked about getting her a car, but that particular day, it was kind of a surprise. It just happened. I felt it was the right one and the time and I did it." When he was asked about his intent in getting the Jetta, Mr. Tinnin responded: "This car was going to be her personal car, yes." The title to the Jetta was issued in Mr. Tinnin's name on July 12, 2016, one day following the accident.

Mr. Tinnin changed his testimony at trial and denied buying the Jetta as a wedding gift for Ms. Medders. Instead, he testified that his purpose in buying the Jetta was to flip it:

> I bought several cars and flipped them. Of course, they're holding the title and then I have to get them put in my name because I don't own the company and then I can resell them and that was my whole purpose in the beginning.
>
> . . . .
>
> [M]y real incentive [in buying the car] was to flip it.

In its order issued on February 6, 2019, the trial court found that neither Ms. Medders nor Mr. Tinnin was credible because of inconsistencies between their testimony at trial and the testimony they gave during their depositions.[2] The court made the following findings of fact and conclusions of law to support its conclusion that neither Ms. Medders' non-owner's auto policy nor Mr. Tinnin's owner's auto policy entitled Ms. Medders to uninsured motorist benefits with regard to the accident that occurred on July 11, 2016:

> This matter involves a motor vehicle accident that occurred on July 11, 2016. Plaintiff was engaged to be married to Tinnin in July of 2016. Prior to their marriage, Plaintiff and Tinnin purchased a home together in May 2016 . . . . Prior to the wedding, Plaintiff and Tinnin discussed purchasing a car for Plaintiff's personal use.
>
> In June and July of 2016, Plaintiff and Tinnin were employed by 24/7 Auto Sales, which is owned by Tinnin's brother. 24/7 Auto Sales is a car dealership with a license to purchase cars at auctions. On June 24, 2016, Tinnin and his brother went to a car auction. At the auction, Tinnin saw a

---

[2] In addition to Mr. Tinnin's inconsistent testimony as described above, Ms. Medders' testimony was inconsistent regarding the number of times she drove the Jetta before the accident, and she denied that the Jetta was furnished or available for her regular use.

2013 Volkswagen Jetta (hereinafter the "Jetta"). In his deposition, Tinnin stated that he wanted to purchase the Jetta for Plaintiff with the intent of giving it to Plaintiff as a wedding present. 24/7 Auto Sales purchased the Jetta from the auction on June 24, 2016. Tinnin purchased the Jetta from 24/7 Auto Sales on July 5, 2016. The Jetta was furnished and made available to Plaintiff for her regular use by Tinnin.

Both Plaintiff and Tinnin testified that Plaintiff drove the Jetta on a number of occasions between July 5, 2016 and the accident on July 11, 2016. On July 10, 2016, Plaintiff drove the car home from 24/7 Auto Sales. Plaintiff drove the car into downtown Nashville for a court ordered drug screening on July 11, 2016. As Plaintiff was leaving downtown, she was hit by the named Defendant Landon Newby. At the time of the accident, Plaintiff was driving the Jetta.

. . . .

In this case, the subject insurance policy issued to Plaintiff was a non-owners policy with a coverage period beginning February 16, 2016 and ending February 16, 2017. Pursuant to the terms, conditions, and limitations set forth in the subject policy, Plaintiff was "only insured for the Coverages and the Limits of Liability for which a premium is shown on the Declaration Page of the Policy." In addition, the Policy extends only to accidents involving a "covered auto," an "additional auto" or a "replacement auto."

The Policy specifically defines a covered auto as "(1) any auto shown on **your Declarations Page**, unless you asked us to delete that from the Policy or (2) **a newly acquired auto**." A newly acquired auto is defined as an "**additional auto** or **replacement auto** that you become the owner of during the policy period if the vehicle is an auto of the type that is an insurable acceptable risk under our Private Passenger Auto Program Rules." The Policy specifically states the insured must ask for an additional auto to be added to the Policy within seven (7) calendar days after becoming the owner of the auto. The Policy defines a "**replacement auto**" as "an auto that you acquire to replace an auto shown on the **Declarations Page** if no other insurance applies to the acquired auto and we insure all autos that you own." There was no evidence presented that the Jetta was listed on the Declarations Page of the Medders Policy. It is undisputed that at the time of the accident Plaintiff had a non-owners policy. It is further undisputed that Plaintiff did not list the Jetta on the Declarations Page and never requested the auto to be added to the Declarations Page within the time prescribed pursuant to the terms of the Policy. Therefore, this Court finds that the 2013 Volkswagen Jetta is not a covered auto as defined in the Policy. The Court finds because

Plaintiff never listed any other autos on the Declarations Page nor requested the Jetta to be added to the Declarations Page within the time prescribed pursuant to the terms of the Policy, it cannot be an additional or replacement auto as defined in the Policy. The Court does find Tinnin purchased the Jetta for Plaintiff and it was available to her for her regular use.

As to the insurance . . . issued to Tinnin by Direct, there is no dispute that it was an owner's policy with a coverage period beginning March 4, 2016 and ending March 4, 2017. On the Declarations Page, the Tinnin Policy lists four (4) vehicles: (1) a 1995 Ford F250; (2) a 2006 Ford F150; (3) a 1993 Chevrolet Camaro; and (4) a 2000 Jeep Grand Cherokee.

The Tinnin Policy contains the same terms and definitions as in the Medders Policy. The Declarations Page for the Tinnin Policy did not include the Jetta, so the Jetta is not a covered auto. There was no testimony that Tinnin intended for the Jetta to replace a car on the Declarations Page, so the Jetta is not a replacement auto. There was no testimony that Tinnin requested to add the Jetta to the Declarations Page, so the Jetta is not an additional auto. As the Jetta is not a covered auto, replacement auto, or additional auto pursuant to the Tinnin Policy, the Jetta was not covered under the Tinnin Policy.

Our review of the trial court's judgment is de novo upon the record, accompanied by a presumption of correctness of the trial court's findings of fact unless the preponderance of the evidence is otherwise. TENN. R. APP. P. 13(d). We review a trial court's legal conclusions de novo without applying a presumption of correctness. *Kautz v. Berberich*, No. E2019-00796-COA-R3-CV, 2021 WL 1034987, at *6 (Tenn. Ct. App. Mar. 18, 2021). "[W]e extend strong deference to a trial court's determination of witness credibility" and "will not overturn a trial court's credibility determination . . . absent clear and convincing evidence to the contrary." *Id.* at *7. This is because the trial court is "'able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility.'" *Finney v. Franklin Special School Dist. Bd. of Educ.*, 576 S.W.3d 663, 680 (Tenn. Ct. App. 2018) (quoting *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)).

An insurance policy is a contract between the policy holder and the insurance company. *S. Trust Ins. Co. v. Phillips*, 474 S.W.3d 660, 663-64 (Tenn. Ct. App. 2015) (citing *Garrison v. Bickford*, 377 S.W.3d 659, 663 (Tenn. 2012)).

"As such, courts interpret insurance policies using the same tenets that guide the construction of any other contract. *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000). Thus, the terms of an insurance policy "'should be given their plain and ordinary meaning, for

the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties.'" *Clark [v. Sputniks, LLC]*, 368 S.W.3d [431,] 441 [(Tenn. 2012)] (quoting *U.S. Bank[, N.A. v. Tenn. Farmers Mut. Ins. Co.]*, 277 S.W.3d [381,] 386-87 [(Tenn. 2009)). The policy should be construed 'as a whole in a reasonable and logical manner,' *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998), and the language in dispute should be examined in the context of the entire agreement, *Cocke Cty. Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985)."

*Id.* at 664-65 (quoting *Garrison*, 377 S.W.3d at 664). Ms. Medders correctly points out that insurance contracts are "'strictly construed in favor of the insured, and if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls.'" *Id.* at 665 (quoting *Garrison*, 377 S.W.3d at 664). "[A] 'strained construction may not be placed on the language used to find ambiguity where none exists,'" however. *Garrison*, 377 S.W.3d at 664 (quoting *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)).

The plain and ordinary meaning of Ms. Medders' non-owner's policy is that Direct did not provide coverage for bodily injury Ms. Medders sustained while she was using or occupying a vehicle that was owned by or furnished or available for the regular use of Ms. Medders, a family member, or a resident. The evidence showed that Mr. Tinnin purchased the Jetta and arranged for the title to be issued in his name prior to the accident. He testified during his deposition that he purchased the car for the personal use of Ms. Medders. The trial court found Mr. Tinnin's deposition testimony regarding his purpose in purchasing the car credible and rejected as not credible his trial testimony that he bought the car for the purpose of flipping it. The trial court was best situated to determine Mr. Tinnin's credibility, and we are not in a position to second-guess the trial court's determination in this regard, given Ms. Medders' failure to cite clear and convincing evidence contrary to the court's credibility finding. The accident occurred shortly after Mr. Tinnin presented Ms. Medders with the Jetta. The fact that Ms. Medders did not have the opportunity to drive the Jetta for long before the accident occurred does not mean that the car was not furnished or available for her regular use. We affirm the trial court's conclusion that Ms. Medders' non-owner's automobile policy did not provide coverage for the injuries she sustained in the accident with Mr. Newby on July 11, 2016.[3]

---

[3]In her brief, Ms. Medders does not challenge the trial court's ruling that Mr. Tinnin's owner's policy did not provide coverage for the accident. If she did, however, we would affirm the trial court's ruling for the reasons set forth in the trial court's order.

C.  Ms. Medders' Motion to Amend

After Ms. Medders filed the first a notice of appeal and the case was remanded to the trial court, Ms. Medders moved to amend her complaint pursuant to Tenn. R. Civ. P. 15.01 to add a jury demand.  The trial court denied the motion to amend, and Ms. Medders contends that the denial was erroneous.

Rule 15.01 provides that a party may amend his or her pleadings "once as a matter of course at any time before a responsive pleading is served."  The rule continues, stating: "Otherwise a party may amend the party's pleadings only by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires."  We review a trial court's decision to grant or deny a Rule 15.01 motion to amend under an abuse of discretion standard.  *City of Oak Ridge v. Levitt*, 493 S.W.3d 492, 499 (Tenn. Ct. App. 2015) (citing *Freeman Indus. LLC v. Eastman Chem. Co.*, 227 S.W.3d 561, 565 (Tenn. Ct. App. 2006)); *March v. Levine*, 115 S.W.3d 892, 908 (Tenn. Ct. App. 2003).  Undue delay and prejudice to the opposing party justify a trial court's decision to deny a motion to amend.  *Levine*, 115 S.W.3d at 909.  Ms. Medders did not move to amend her complaint until after the parties tried the coverage issue and the court issued its decision denying coverage under the relevant automobile policies.  Ms. Medders offers no explanation for why she waited so long to move to amend her complaint, and we find that allowing Ms. Medders to amend her complaint at such a late date would severely prejudice Direct.  Accordingly, we affirm the trial court's denial of her motion to amend.

III. CONCLUSION

The judgment of the trial court is affirmed.  Costs of this appeal are assessed against the appellant, Kimberly Medders, for which execution may issue if necessary.

__/s/ Andy D. Bennett_____
ANDY D. BENNETT, JUDGE